OPINION OF THE COURT
William H. Bristol, J.
An information and supporting deposition have been filed with this court against the defendant accusing him of a class A misdemeanor of operation of a motor vehicle while his blood alcohol content was greater than .10 of 1% in violation of subdivision 2 of section 1192 of the Vehicle and Traffic Law. The crime is alleged to have occurred on February 18,1980 at 2908 Lake Avenue, Rochester, New York.
On March 18, 1980, pursuant to CPL 240.20, the defendant demanded that the People provide him with the original test ampoule used in the breathalyzer (model 900 A) test given to the defendant on February 18, 1980. The results of this test form the basis of the prosecution in the instant matter. In response, the People revealed that the test ampoule had been destroyed as a matter of routine police procedure.
*1069 The defendant then moved for an order to suppress the evidence of the breathalyzer test on the grounds that the failure of the police department to preserve the ampoule constituted a violation of his constitutional right to due process guaranteed him by the Fourth Amendment of the United States Constitution made applicable to the States through the Fourteenth Amendment.
CPL 240.20 provides that:
“1. Except to the extent protected by court order, upon a demand to produce by a defendant against whom an * * * information is pending, the prosecutor shall disclose to the defendant and make available for inspection * * * or testing, the following property: * * *
“(g) Anything required to be disclosed, prior to trial, to the defendant by the prosecutor, pursuant to the constitution of this state or of the United States.” (L 1979, ch 412, § 2, eff Jan. 1,1980.)
Where the exact content of nondisclosed material is unknown the United States Constitution requires disclosure by the People to the defense counsel if the material is such that if presented during trial it would assist the search for truth. (See Brady v Maryland, 373 US 83; United States v Bryant, 439 F2d 642, 648; see, also, People v Richter, 102 Misc 2d 285.)
In Brady v Maryland (supra, p 87) the court held that: “the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” Construing the holding in Brady (supra), Judge Shelly Wright of the District of Columbia Court of Appeals in United States v Bryant (supra) was faced with the absence of certain evidence concerning which neither the court nor the defense counsel had any idea whether the material missing and undisclosed was “favorable” or “unfavorable” to the accused. However, the court did know that the missing evidence was “absolutely crucial to the question of [defendant’s] guilt or innocence.” (United States v Bryant, supra, at p 648.) Accordingly, the court held that: “That fact, *1070 coupled with the unavoidable possibility that the tape might have been significantly ‘favorable’ to the accused, is enough to bring these cases within the constitutional concern.” (United States v Bryant, supra, at p 648.)
Judge Wright explained his holding as follows (supra, p 648): “If the due process requirement is directed to evidence whose non-disclosure ‘might’ have harmed the accused, its purpose clearly reaches the type of missing evidence at issue here. Were Brady and its progeny applicable only when the exact content of the non-disclosed materials was known, the disclosure duty would be an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal. The purpose of the duty is not simply to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance in investigative resources, will be exclusively in the hands of the Government.” (See, also, Brady v Maryland, supra, at pp 87-88.)
There is no question but that the ampoule used to test blood alcohol content of the defendant through a breath sample was “absolutely crucial to the question of the defendant’s guilt or innocence” at the time of the test. However, unlike the tape recordings in Bryant (supra), which remain in virtually the samé physical condition for months and years after they are made *, the evidence in the instant case is a glass ampoule filled with a solution chemically composed of 99.95% of 50% sulphuric acid solution with water, .025% potassium dichromate and .025% silver nitrate. The People admit that after the breathalyzer test was given to the defendant and the results were checked and recorded, this test ampoule was disposed of as a routine procedure. The court is satisfied that the destruction of the ampoules and their contents was neither malicious, nor in bad faith but it was conformity with the standard rules and procedures of the Rochester Police Department. The reason for this disposal policy is at the heart of the present controversy.
*1071 Defendant claims that it is scientifically possible to preserve the used test ampoule in such a way that it could be tested months later and the results of that subsequent test would yield a scientifically reliable analysis of the original makeup of the solution at the time that it was used on the particular defendant, and therefore be able to determine whether the original test results were accurate.
In opposition, the People assert that:
1. The chemical reaction set in progress by the introduction of ethanol into the breathalyzer solution does not have an absolute end point at a given moment in time, but rather continues to react overtime;
2. It is scientifically impossible at this point in history to prevent unpredictable changes in the contents of used breathalyzer ampoules; and
3. The changes in the contents of the used breathalyzer ampoule evaluated statistically did not correlate with time sufficiently well to permit scientifically valid and forensically acceptable conclusions regarding the validity of the original breathalyzer test results.
The duty to disclose rests with the police as well as with the District Attorney. (See United States v Bryant, 439 F2d 642, 650, supra.) Moreover: “[Bjefore a request for discovery has been made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later.” (United States v Bryant, supra, at p 651.)
If the defendant’s scientific hypothesis is correct, then to allow the destruction of the test ampoule obviously violates due process under the principles of Brady and Bryant (supra). If the People are correct in their view of the state of the science of preservation of ampoules, then preservation of the ampoule preserves nothing that is any longer material to issue of guilt or innocence of the defendant, Brady and Bryant principles are not violated and there is no need for suppression of the breathalyzer test results.
Neither of the parties hereto question the validity of the breathalyzer machine as a valid scientific method for testing blood alcohol content. Indeed, the Legislature and courts in *1072 this State and others have determined the breathalyzer test to be a scientifically reliable device for measuring blood alcohol content. (See People v Donaldson, 36 AD2d 37; People v Morris, 63 Misc 2d 124; see, also, e.g., People v Stark, 73 Mich App 332; Vehicle and Traffic Law, § 1195.)
' On May 15, 1980 a court-ordered suppression hearing was held to determine which scientific theory was accurate. The issue thus drawn, the hearing was a joust between two scientific knights whose armor was their credentials and their experiments on the subject at hand.
“[Wjhere the defendant is asserting as here that an illegal procedure was used which violated his constitutional right to due process, he must carry the burden of proving his contention.” (People v Sutton, 47 AD2d 455, 458.) This court holds that the defendant failed to meet his burden by a fair preponderance of the credible evidence.
Both of the experts who testified for the defense and for the prosecution had impressive professional credentials. They were sincere and serious scientists.
Grant Pike, the defendant’s expert, is a chemical engineer who earned his B.S. degree from Carnegie Institute and his Master’s degree from the University of Rochester. He testified that he has preserved ampoules with organic compounds in a solution identical to that found in the breathalyzer. He believes that one could run later tests on these preserved ampoules and obtain a scientifically valid reading of the original solution content of the ampoules. However, he has not attempted to preserve the type of ampoules here in question nor has he run tests to verify his theory of preservation with breath-test ampoules or others.
The People’s expert, Kurt M. Dubowski, holds a Bachelor’s degree from New York University, a Master’s degree from Ohio State University and a Ph.D. from Ohio State University granted in 1949. He is an expert in clinical and forensic chemistry and toxicology and has been so for nearly 30 years. Most importantly, he has specialized in both his academic and clinical studies in the effects of alcohol on people and breath-test analysis. During the last five years he had done extensive research and publication on the subject of breath-test analysis, all of which was based, on sev *1073 eral thousand experiments concerning preservation for later testing of ampoules such as the one in question here. Entered in evidence was a list of 99 publications issued under Dr. Dubowski’s name, the most recent 20 of which dealt largely with blood alcohol analysis type issues and many of which concerned preservation of ampoules for later testing.
Dr. Dubowski testified that he had conducted extensive experiments on the hypothetical means of preservation of breath ampoules suggested by Mr. Pike and found that none of them worked well enough to yield scientifically valid data from which the contents of the breath ampoule at the time of the test could be determined.
Dr. Dubowski was clearly the specialist in this particular field while Mr. Pike was the general, practitioner. Mr. Pike suggested untested theories (educated guesses) while Dr. Dubowski stated results of scientific studies.
FINDINGS OF FACT
Based on the testimony and evidence presented at this hearing this court finds as fact:
1. Presently, it is not possible to preserve the breathalyzer ampoule so as to reliably eliminate all factors which might cause unpredictable changes in the ampoule content after administering the breathalyzer test;
2. The original breathalyzer test begins a reaction inside the ampoule which continues in an unpredictable and uncontrollable manner; these unpredictable reactions cause analysis by retesting of the ampoule to be totally unreliable evidence as a check on the accuracy or validity of the original breathalyzer test;
3. There is no predictable relationship between the changes that occur within the test ampoule and the passage of time;
4. At the present time, subsequent retesting or chemical analysis of the test ampoules, no matter how preserved, provides no acceptable scientific relationship to the accuracy or validity of the original test results;
5. The theories and the experimentation of Dr. Dubowski have been thoroughly tested and scientifically scrutinized *1074 and are considered by the court acceptable as scientific fact, while the experimentation and theories of Mr. Pike have not been thoroughly tested nor scientifically scrutinized so as to be considered acceptable as scientific fact or accurate enough to provide results admissible as evidence.
CONCLUSION OF LAW
Preservation of the test ampoule is neither feasible, practical nor relevant since subsequent testing will not give any scientifically reliable results, this being due to the uncontrollable and unpredictable changes that occur in the breathalyzer test ampoule. Furthermore, even if these changes or variations could be scientifically accounted for and accurately analyzed, one still could not properly analyze the test ampoule subsequent to a breathalyzer test because there is simply no predictable relationship between the changes that occur and lapse of time. There is no presently known scientific technique to preserve the ampoules to allow for later testing which testing would yield scientifically valid results.
Accordingly, the court finds that the Brady /Bryant principles of due process have not been violated and the defendant’s motion to suppress is denied.

See, generally, Pickett & Lemcoe, Preservation and Storage of-Sound Recordings, Library of Congress, 1959.