OPINION OF THE COURT
William H. Bristol, J.
Do scientific procedures allow and does the United States Constitution require preservation of a deep-lung breath sample by police investigating an individual on charges of driving while intoxicated? These are the essential questions posed by defendant’s application.
For the reasons explained hereinafter, this court holds that they do.
On October 29, 1982 Rochester Police Officer W. J. Bar-tel arrested Bruce D. Hampton on East Main Street in the City of Rochester and charged him with the misdemeanors of driving while his blood alcohol content exceeded .10 of 1% and with driving while intoxicated. (Vehicle and Traffic Law, § 1192, subds 2, 3.)
*758 Officer Bartel transported Hampton to the Public Safety Building in Rochester where Hampton voluntarily submitted to a chemical test to measure his blood alcohol content. Using a Smith and Wesson model 900A breathalyzer,[1] the machine operator directed Hampton to exhale a sample of his deep-lung breath into the machine. This he did, voluntarily. The machine accepted this sample of his breath, tested it and the operator calculated Hampton’s blood alcohol content to be .15 of 1% by weight. Neither the breathalyzer operator nor the arresting officer made any attempt to preserve any of Hampton’s breath sample. They simply took the entire sample and used what they needed.
Later the same day, this court arraigned Hampton, and entered a not guilty plea for him pending an appearance of counsel. He obtained an attorney who in due course brought on discovery demands and omnibus motions. Somewhat inartfully,[2] defense counsel in his applications sought discovery of a sample of the defendant’s breath.
Although the People admit that a sample of defendant’s breath was not preserved, they claim that CPL 240.20 (subd 1, par [g]) and the due process principles articulated in Brady v Maryland (373 US 83) and its progeny create no such requirement. Their factual explanation for the non-preservation of the breathalyzer instrument “as it is presently situated has not been adapted for the preservation of samples” and, “since it would be a timely [sic] and costly burden of law enforcement to effectively preserve a sample” as a matter of routine police procedure, the police do not preserve such a sample. In addition, the People assert that such a sample cannot be preserved in a manner which would yield evidence which to a reasonable degree of scientific certainty would be material to the issue of guilt or punishment as a result of its later testing.
*759 Their legal explanation for nonpreservation is that, at worst, since the exact nature of what would have been discovered in the trapped sample is unknown, there can be no showing of whether it is exculpatory {Brady) material or inculpatory {non-Brady) material. Therefore, they argue, no due process violation exists.
Based on the People’s failure to preserve and to disclose a sample of the defendant’s breath, important evidence in this case, the defendant asks this court to prohibit the introduction of any evidence concerning the giving and the results of defendant’s breathalyzer test. (See CPL 240.70, subd 1.)
CPL 240.20 in relevant part provides:
“1. Except to the extent protected by court order, upon demand to produce by a defendant against whom an * * * information is pending, the prosecutor shall disclose to the defendant and make available for * * * testing * * *
“(g) Anything required to be disclosed, prior to trial, to the defendant by the prosecutor, pursuant to the constitution of this state or of the United States.”
The United States Supreme Court has held that “suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” (Brady v Maryland, 373 US 83, 87, supra.) In United States v Agurs (427 US 97) Justice Stevens explained that where there is a pretrial request for certain information — for “specific evidence” — it is a denial of due process for the prosecution to suppress such evidence if the evidence is “material” to the case. Justice Stevens wrote (p 104): “A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.”
Unlike the instant case and unlike the Brady case the court in Agurs faced a situation where there was not a specific request for specific evidence. The Agurs court held that the test of “materiality” of evidence is different when no request for certain evidence has been made or where *760 there has been made merely a general unspecified request.[3]
Importantly, Justice Stevens wrote that: “Although there is, of course, no duty to provide defense counsel with unlimited discovery of everything known to the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.” (United States v Agurs, supra, p 106.)
This is exactly what the prosecutor has done in this case — submitted the question to the court. Applying the principles enunciated in Agurs, this court is bound to apply the test of evidentiary materiality set out in Brady v Maryland (supra).
But, the Brady-Agurs principles of due process can be easily circumvented — in good faith or bad faith. As Judge Skelly Wright wrote: “These cases point up an anomaly of our criminal process: controlled by rules of law protecting adversary rights and procedures at some stages, the process at other stages is thoroughly unstructured. Beside the carefully safeguarded fairness of the courtroom is a dark no-man’s-land of unreviewed bureaucratic and discretionary decision making. Too often, what the process purports to secure in its formal stages can be subverted or diluted in its more informal stages.” (United States v Bryant, 439 F2d 642, 644 [Bryant I].)
Bryant I established an important and very understandable extension of the principles enunciated in Brady v Maryland (supra). Bryant I dealt with the issue of whether the intentional nonpreservation by Government investigators of discoverable evidence amounted to illegal suppression thereof. Government agents had made tape recordings of certain conversations between the defendant and the police agent allegedly concerning the sale of certain nar *761 cotíes. The Government, however, claimed that it had lost the recordings and that, therefore, the exact content of the recording were unknown. And there was no question but that the Government had no intention nor made any attempts to preserve the tapes.
The court held: “At issue, then, are the legal consequences of intentional non-preservation by investigative officials of highly relevant evidence, colored by a clear reluctance even to admit that the evidence ever existed at all.” (United States v Bryant, supra, p 647.)
The difficulty in Bryant I that was not encountered in Brady was that, as in the instant case, the court had no idea whether the nonpreserved evidence would have been inculpatory or exculpatory of the defendant: “But in these cases we are entirely in the dark. We have no idea what may have been on the tape. For all we know, the tape would have corroborated Agent Pope’s story perfectly; or, for all we know, it might have completely undercut the Government’s case. There is not simply ‘substantial room for doubt,’ but room for nothing except doubt as to the effect of disclosure. What we do know is that the conversations recorded on the tape were absolutely crucial to the question of appellants’ guilt or innocence. That fact, coupled with the unavoidable possibility that the tape might have been significantly ‘favorable’ to the accused is enough to bring these cases within the constitutional concern.” (United States v Bryant, supra, p 648; emphasis supplied.)
Underlying this constitutional due process consideration, Judge Wright emphasized a sound and commonsense policy of fundamental fairness: “Were Brady and its progeny applicable only when the exact content of non-disclosed materials was known, the disclosure duty would be an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal. The purpose of the duty is not simply to correct an imbalance of advantage, whereby the prosecution may surprise the defense at trial with new evidence; rather, it is also to make of the trial a search for truth informed by all relevant material, much of which, because of imbalance of investigative resources, will be exclusively in the hands of the Government.” (United States v Bryant, supra, p 648.)
*762 As Bryant I made so compellingly clear (p 651): “It is most consistent with the purposes of those safeguards[4] to hold that the duty of disclosure attaches in some form once the Government has first gathered and taken possession of the evidence in question. Otherwise, disclosure might be avoided by destroying vital evidence before prosecution begins or before defendants hear of its existence. Hence we hold that before a request for discovery has been made, the duty of disclosure is operative as a duty of preservation. Only if evidence is carefully preserved during the early stages of investigation will disclosure be possible later.” (Emphasis supplied.)
Finally, Judge Wright in Bryant I (439 F2d 642, 651, supra), dealt with the question of sanctions. He framed the issue as: “whether full sanctions for non-disclosure ought to be invoked absolutely, or whether imposition of sanctions ought to depend upon the circumstances of the material’s disappearance.” The court’s approach recognized that due process “‘is not a technical conception with a fixed content unrelated to time, place and circumstances.’ ” (Cafeteria Workers v McElroy, 367 US 886, 895) and that “due process is flexible and calls for such procedural protections as the particular situation demands.” (Morrissey v Brewer, 408 US 471, 481.)
Relying on the approach followed in United States v Augenblick (393 US 348) the court held that whether due process principles had been violated would depend on an analysis of the circumstances surrounding the nonpreservation of the unavailable evidence.
Applying these principles Bryant I held that: “An exception for good faith loss of important evidence must not be allowed to swallow the discovery rules, and the burden of explanation on the Government must be a heavy one; but criminal convictions otherwise based on sufficient evidence may be permitted to stand so long as the Government made ‘earnest efforts’ to preserve crucial materials and to find them once a discovery request is made.” (United States v Bryant, supra, p 651.)
*763 The court went on to say that “[o]f course, the regular procedures for preservation of tapes involving Government undercover agents — as in the cases before us — might be regular, but would be insufficiently protective of defendant’s right to discovery.” (United States v Bryant, supra, p 652.)
Having held that both constitutional due process principles as well as Federal statutory provisions require the preservation of material evidence, the court went on to find that it was faced with the choice of either dismissing the indictment or affirming the case below. Judge Wright was unwilling to make that decision based on the record before him and, accordingly, remanded the proceedings for a more thorough development of the record to determine “the degree of negligence or bad faith involved, the importance of the evidence lost, and the evidence of guilt adduced at trial in order to come to a determination that [would] serve the ends of justice.” (United States v Bryant, supra, p 653.)
Subsequently the District Court held a hearing on remand and issued a decision in which it made findings of fact that the tapes were both inaudible and, even if they had been intelligible, would have had little effect on the case against the defendant. Accordingly it ruled that under the principles of Bryant I (supra) and Brady (373 US 83, supra): “[T]he Government’s failure to produce an inaudible tape breached no duty of disclosure either under the Jencks Act, 18 U.S.C. 3500; F.R.Cr.P. 16; or Brady v. Maryland, supra, that would warrant the application of sanctions under any of the foregoing authorities in this case.” (United States v Bryant, 331 F Supp 927, 931.)
Based on these factual findings, and without at all changing the constitutional principles announced in its original decision, in a Per Curiam decision the Court of Appeals for the District of Columbia Circuit affirmed the factual decision made by the District Court. (United States v Bryant, 448 F2d 1182 [Bryant II].) Significantly, the approach and the holding in Bryant I (supra), has been followed by many other United States Circuit Courts of Appeals which have been faced with the same issue. (See, e.g., United States v Loud Hawk, 628 F2d 1139; Armstrong v Collier, 536 F2d 72; United States v Miranda, 526 F2d *764 1319; United States v Pollock, 417 F Supp 1332.) Indeed, in United States v Miranda (supra, p 1327) the Second Circuit Court of Appeals pointed out that: “Other circuits have dealt with the loss of disclosable evidence by the Government on a case-by-case basis, and have refused to impose sanctions where the loss was inadvertent and not deliberate or in bad faith, and there was not such prejudice to the defendant as to deny him a fair trial. See United States v. Love, 482 F.2d 213 (5th Cir. 1973); United States v. Sewar, 468 F.2d 236 (9th Cir. 1972), cert, denied, 410 U.S. 916, 93 S. Ct. 972, 35 L.Ed.2d 278 (1973); United States v. Shafer, 445 F.2d 579, 581-82 (7th Cir.), cert. denied, 404 U.S. 986, 92 S.Ct. 448, 30 L.Ed.2d 370 (1971); United States v. Rojas, 502 F.2d 1042, 1044-45 (5th Cir. 1974).”
•When the issue of whether the duty to disclose (Brady-Agurs) is operative as a duty to make earnest efforts to preserve (Bryant I) has been raised in New York courts, they have, generally, adopted the position articulated by Judge Wright in Bryant I. For example, in People v Saddy (84 AD2d 175) the defendant’s conviction for criminal sale of a controlled substance was reversed when law enforcement officials, for what they claimed were reasons of economy, erased a series of tape recordings of conversations between an undercover law enforcement official and the defendant. Echoing the words in Bryant I (439 F2d 642, supra), the Second Department found that (p 178): “In order to safeguard the defendant’s rights under Brady, the prosecution, as well as law enforcement officials, are under a duty to diligently preserve all materials which may be subject to disclosure (United States v Bryant, 439 F2d 642). It is not for the prosecution, or the police, to select which materials should be preserved, and which should be destroyed. Were law enforcement officials empowered to pick and choose the materials deemed worthy of preservation, then the due process rights guaranteed by Brady would be shallow indeed; Brady could be circumvented by merely destroying evidence unfavorable to the prosecution before it is demanded by the defendant (see United States v Bryant, supra, p 648).” Similarly, various New York State Supreme Court decisions have recognized that the BradyAgurs rules of disclosure of material evidence place upon *765 the Government a “correlative duty to preserve such material evidence.” (See People v McCann, 115 Misc 2d 1025, 1028; People v Perez, 50 AD2d 908; People v Santiago, 116 Misc 2d 340; People v Smith, 117 Misc 2d 737; People v Richter, 102 Misc 2d 285; People v Le Pree, 105 Misc 2d 1066; People v Shepard, unpublished opn, Brighton Town Ct, March 25, 1983.)
This court has been able to ascertain only one case decided by the Fourth Department, Appellate Division, close to the issue at hand. In People v Briggs (81 AD2d 1017) the defense had argued on appeal that the People should be precluded from offering evidence of blood specimen test results because the defendant’s blood sample had been inadvertently lost or destroyed by the City of Batavia Police Department. The parties also stipulated that this inadvertent loss or destruction had not been done intentionally to hinder prosecution. Significantly the court pointed out that the People did not dispute the defendant’s right to discover and independently test the blood sample citing People v White (40 NY2d 797). What the court did note was that it agreed with the prosecution that (p 1017): “Whether the blood sample could have produced evidence favorable to the defendant’s case is speculative and failure to produce it does not establish a violation of the Brady rule (Brady v Maryland, 373 US 83; see, also, United States v Agurs, 427 US 97). In this sense the blood specimen was neither exculpatory nor material (People v Gissendanner, 48 NY2d 543, 551; People v Jones, 44 NY2d 76; People v Stridiron, 33 NY2d 287).”
The record on appeal in Briggs reveals that defense counsel never raised as an issue a due process, Bryant I violation. And, reading the Briggs case as well as those relied upon by and cited in Briggs[5] reveals that the Fourth Department never considered the issue. And so, simply put, the issue has never been decided in the Fourth Department.
Likewise in People v Clow (unpublished decision, Rochester City Ct, Joseph D. Valentino, J., 1983) the court simply never addressed the issues raised in Bryant I. *766 Finally, in the unpublished decision of People v Rich (Monroe County Ct, April 28, 1983, Raymond E. Cornelius, J.) the trial court held that based on the motion papers in that particular case, a “second breath sample has never existed and * * * there was no duty to collect and obtain such a sample.”
This court agrees with its respected and learned colleague in Rich (supra) that the People have no duty to collect evidence for a defendant and no obligation to disclose something they never had. But, unlike the facts in Rich, in the instant case it is established as fact that tangible property — a breath sample — existed but was not preserved. Moreover, this court respectfully points out that Bryant I at its inception (439 F2d 642, supra) did find both a constitutional due process violation and a Federal statutory violation in the nonpreservation of material evidence. What the District Court ruled on remand and which was sustained by the Circuit Court on review (Bryant II) was that the sanction of dismissal of the indictment should not be applied because the evidence that was not preserved was found, after an evidentiary hearing, to have not been material as a result of its inaudibility. In any event, the decision in Rich is not binding on this court as it was a decision at the Trial Term of Monroe County Court.[6]
This court is firmly convinced that the sound constitutional due process principles articulated in Bryant I and adopted by Federal Circuit Courts of Appeals and by many New York State courts dictate that Bryant I principles of due process apply generally to the preservation and disclosure of the material evidence at issue in this case.
But is a preserved deep-lung breath sample “material evidence”?
As Justice Lang stated in Santiago (116 Misc 2d 340, 344, supra): “[T]he results of breathalyzer tests are clearly material to guilt or innocence, and are not merely ‘evidentiary’ in nature. Under current New York law a blood alcohol reading of .1 of 1% by weight is not merely evidence of driving while intoxicated (presumptive or otherwise). If a jury finds that the defendant drove with a .1% blood *767 alcohol content conviction is mandated. (Vehicle and Traffic Law, § 1192, subd 2.) Clearly a defendant should have the right to contest a result which automatically establishes guilt.”
But whether the deep-lung breath sample, which clearly constitutes material evidence at the time it is taken, continues to be material evidence after it is trapped and preserved depends upon a question of scientific fact. Specifically, a trapped breath sample only can be material evidence if such a sample can be preserved in such a way that subsequent tests of it would yield, to a reasonable degree of scientific certainty, a reliable analysis of the defendant’s blood alcohol content as measured by his breath at the time the original breathalyzer test was taken. (See People v Santiago, supra, p 344; see, also, People v Le Pree, 105 Misc 2d 1066, 1069, supra.)
On March 9,1983, a suppression hearing was held before this court to ascertain whether:
1. A sample of defendant’s breath could be trapped at the time of the original breathalyzer test;
2. Whether such trapping was practical, feasible and economical; and,
3. Whether subsequent testing of such a preserved breath sample would yield to a reasonable degree of scientific certainty an accurate reading of defendant’s blood alcohol content at the time of the original taking of the breathalyzer test.
Since the defendant was asserting that an illegal procedure was used which violated his constitutional rights to due process, it was he who had to carry the burden of proving his contention. (People v Sutton, 47 AD2d 455.)
The defense called the only witness, Dr. Donald Wilkinson. His testimony was marked by no serious inconsistencies or contradictions and had the force and flavor of credibility. His credentials as an objective scientific expert were adequately established and I give credence to his testimony. The People called no witnesses and offered no proof.
Based on the testimony adduced at the hearing, the court makes the following findings of fact.
*768 When the breathalyzer machine was used to collect a deep-lung breath sample from this defendant, there existed an unlimited amount of breath flowing to the machine. Only part of it was used by this machine. Countless breath samples were available to the police. At the time the defendant took this breathalyzer test, there existed breath trapping systems which were easy to use, inexpensive and accurate methods for preserving breath for reanalysis at a later time. Furthermore, trapped air samples can be stored depending on the type of “trap” for up to 120 days and then tested in such a way as to give to a reasonable degree of scientific certainty, a reliable and accurate reading of defendant’s original blood alcohol content as based on his breath at the time of the initial breathalyzer test.
Given these findings of fact, this court decides that as a matter of law that the People and their agents had a constitutional duty under Brady-Agurs-Bryant I to preserve for and to disclose to the defendant upon request a sample of his breath because, as a matter of law, this trapped sample would have been material evidence.
That the police department as agents of People, viz., as “the Government”, did not trap and preserve this existing sample of the defendant’s breath is undisputed. Thus, the final question before the court is what sanctions, if any, should be applied in this case.
In this respect, Bryant I and the Federal and New York cases that follow it (see above) are instructive. (See, e.g., People v McCann, 115 Misc 2d 1025, supra; People v Saddy, 84 AD2d 175, supra.) Although most of these cases dealt with posttrial applications, this court avoids that problem by dealing with the question in advance of trial.
The test announced in Bryant I involves a requirement of weighing the degree of negligence or bad faith involved with the nonpreservation, and the importance of the evidence that is lost, and the earnest efforts made by the People to preserve material evidence.
With these principles in mind, this court directs that the People shall present evidence at a further hearing to be held at a date mutually convenient to the court and all parties at which time the court will consider proof to be *769 given by the People to establish whether or not the good-faith exception for loss of important evidence under the standards enunciated in Bryant I (439 F2d 642, supra) or Augenblick (393 US 348, supra) have been satisfied so as to avoid sanctions for nondisclosure.

. People v Donaldson (36 AD2d 37, 40) held that “(Wle think the time has come when we may recognize the general reliability of the Breathalyzer as a device for measuring the concentration of alcohol in the blood, and that it is not necessary to require expert testimony as to the nature, function or scientific principles underlying it”.

. Defense counsel is a former Assistant District Attorney who specialized in driving while intoxicated cases. His papers assumed what he apparently knew from his earlier professional experience, viz., that the police department did not preserve any part of the defendant’s breath sample. Hence, he sought suppression of the test results at the outset in his omnibus motion papers. All of the District Attorney’s opposing responses and legal memoranda admit what the movant has presumed. And, so, this motion properly raises the issue of nonpreservation of the deep-lung breath sample.

. “The third situation in which the Brady rule arguably applies, typified by this case, therefore embraces the case in which only a general request for ‘Brady material’ has been made.” (United States v Agurs, 427 US 97, 107.)

 “Safeguards” referred to the constitutional due process requirements and, also, to Federal statutory rights under rule 16 of the Federal Rules of Criminal Procedure (US Code, tit 18, Appendix) and the Jencks Act (US Code, tit 18, § 3500).

. No Bryant I issue was involved in People v Gissendanner (48 NY2d 543), People v Jones (44 NY2d 76), or People v Stridiron (33 NY2d 287).

. People v De Sisto (27 Misc 2d 217); see, generally, 1 Carmody-Wait 2d, Courts and Their Jurisdiction, § 2:58, p 68.