INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL–CIO, Petitioner,

v.

FEDERAL HIGHWAY ADMINISTRATION, et al., Respondents.

No. 94–1313.

United States Court of Appeals, District of Columbia Circuit.

Argued May 12, 1995.

Decided June 9, 1995.

James A. McCall argued the cause for petitioner. With him on the briefs was Judith A. Scott.

Jonathan R. Siegel, Atty., U.S. Dept. of Justice, argued the cause, for respondents. With him on the brief were Frank W. Hunger, Asst. Atty. Gen., Leonard Schaitman and Mark B. Stern, Attys. Robert V. Zener, Atty., entered an appearance.

Before: WALD, SILBERMAN and SENTELLE, Circuit Judges.

WALD, Circuit Judge:

The International Brotherhood of Teamsters ("IBT") petitions for review of regulations issued by the Department of Transportation ("DOT") and the Federal Highway Administration ("FHWA") (collectively, the "Secretary") governing the use of alcohol by commercial motor vehicle operators. Petitioner contends that the regulations' failure to compel that a "split specimen" sample be preserved when breath testing is employed to determine a driver's alcohol level is inconsistent with the dictates of the Omnibus Transportation Employee Testing Act of 1991 ("Testing Act" or "Act"), Pub.L. No. 102–143, Title V, 105 Stat. 952 (codified in relevant part at 49 U.S.C.App. § 2717 (Supp. IV 1992)). Petitioner further argues that the regulations violate the Act because they do not require that "reasonable suspicion" testing be based on the observations of at least two supervisors. We hold that petitioner's objections lack merit and deny the petition for review.

## I. BACKGROUND

The Testing Act became law on October 28, 1991. The Act directed the Secretary to promulgate regulations requiring motor carriers to conduct pre-employment, reasonable suspicion, random, and post-accident alcohol testing of their drivers. 49 U.S.C.App. § 2717(a). The Act imposed similar responsibilities on the Secretary with regard to railroad workers and mass transit workers, and on the Administrator of the Federal Aviation Administration with regard to aviation workers. *See* 105 Stat. at 953–65.

On February 15, 1994, DOT and several of its operating administrations, including FHWA, issued final rules implementing the Act's mandate. DOT published a common preamble to all of these regulations. *See* Limitation on Alcohol Use by Transportation Workers, 59 Fed.Reg. 7302 (1994). DOT also announced generally applicable procedures to be employed in drug and alcohol testing, *see* 49 C.F.R. §§ 40.51 to 40.83 (1994), while its operating arms published rules limiting alcohol use by workers in each mode of transportation and establishing the circumstances under which employees will be tested for compliance with those rules. *See, e.g.,* 49 C.F.R. §§ 382.201 to 382.209 (1994) (FHWA limitations on alcohol use by motor vehicle operators); *id.* at §§ 382.301 to 382.311 (FHWA rules on when testing should take place). The present appeal challenges aspects of both FHWA's rules governing when commercial motor vehicle carrier operators may be subjected to testing and DOT's general testing procedures.

### A. *The FHWA Regulations*

The FHWA regulations provide that an employer shall require a driver to submit to an alcohol test when the employer has a "reasonable suspicion" that the driver has violated FHWA's substantive rules governing the use of alcohol. *Id.* at § 382.307(a). Petitioner's challenge to these regulations concerns the manner in which "reasonable suspicion" determinations are made.

The regulations mandate that "reasonable suspicion" decisions be based on "specific, contemporaneous, articulable observations concerning the appearance, behavior, speech or body odors of the driver." *Id.* Such observations must be made by a supervisor or company official who is trained, in accordance with FHWA regulations, as to the physical indicators of alcohol misuse. *Id.* at § 382.307(c); *see also id.* at § 382.603 (governing the training of supervisors regarding alcohol misuse indicators). The observations

must be made during, just preceding, or directly following the period in which the driver is required to be in compliance with the substantive regulations. *Id.* at § 382.307(d). Finally, the person who performs the alcohol test must be someone other than the person who determines that reasonable suspicion of a violation exists. *Id.* at § 382.307(c). Petitioner claims that the FHWA regulations are flawed because they do not require that "reasonable suspicion" observations be made by "at least two supervisors or company officials, if feasible," as do the agency's drug testing guidelines. *Id.* at § 391.99(c).

### B. *The DOT Regulations*

Once the determination has been made that a driver must undergo alcohol testing, the procedures by which the testing is carried out are governed by the DOT's general testing regulations. *Id.* at § 382.105. DOT's rules provide that breath testing, using an evidential breath testing device ("EBT"), shall be employed to determine an employee's alcohol level.[1] *Id.* at § 40.53. All tests must be conducted by a "breath alcohol technician" trained in the operation of EBTs and in DOT's procedures. *Id.* at § 40.51(a). The EBT utilized must have a quality assurance plan insuring regular inspection, calibration, and maintenance, developed by the manufacturer and approved by the National Highway Traffic Safety Administration. *Id.* at § 40.55.

Employees selected for testing first undergo a "screening" test; if it yields an alcohol concentration above a specified level, a "confirmation" test must be administered. *Id.* at §§ 40.63, 40.65. The EBT employed in the confirmation test must provide a printed copy of the result in triplicate. *Id.* at § 40.53(b). A number of additional safeguards are built into the testing process, including the use of individually-sealed mouthpieces, *id.* at § 40.63(b), calibration "check" tests performed on plain air before and after confirmation testing, *id.* §§ 40.65(d), 40.65(h)(4), and a mandatory fif-teen-minute waiting period between screening and confirmation tests. *Id.* at § 40.65(b). Petitioner nonetheless claims that the DOT testing regulations are defective because they do not require that a "split specimen" sample be retained when alcohol testing is performed using an EBT.

## II. ANALYSIS

### A. The "Reasonable Suspicion" Determination

■ We begin our analysis with IBT's challenge to the FHWA regulations. Petitioner first correctly notes that the Testing Act requires the Secretary to "ensure appropriate safeguards for testing" and "ensure that employees are selected for tests by non-discriminatory and impartial methods." 49 U.S.C.App. §§ 2717(d)(6) & (8). According to IBT, however, these statutory provisions somehow compel that "reasonable suspicion" alcohol "testing [ ] be based on the observations of at least two (2) supervisors trained to make such observations." Petitioner's Brief at 15. Because the FHWA regulations permit the determination to be made by a single supervisor or company official trained in accordance with FHWA rules, 49 C.F.R. § 382.307(c), IBT maintains that the regulations are inconsistent with the Testing Act and must be held unlawful. *See* Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (1988) (requiring courts to "hold unlawful and set aside agency action ... not in accordance with law").

We disagree. Certainly nothing in the statutory text unambiguously requires that two supervisors observe the behavior giving rise to "reasonable suspicion" alcohol testing. We therefore review only to ensure that the manner in which the agency has sought to satisfy its statutory mandate is "reasonable." *See Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

---

1. DOT has recently published proposed regulations that would permit saliva testing to be used to perform an initial screening test; the required confirmation test would still employ an EBT. *See* Procedures for Transportation Workplace Drug and Alcohol Screening Devices, 60 Fed. Reg. 3371 (1995). This proposed rule is not at issue in this case.

The Secretary argues that the regulations reasonably implement the "appropriate safeguards" and "nondiscriminatory methods" requirements by requiring that:

1. the determination of "reasonable suspicion" must be based on specific, contemporaneous, articulable observations concerning the driver's appearance, behavior, speech or body odors, *see* 49 C.F.R. 382.307;

2. the observation must be made first-hand by a supervisor or company official, not by a third person, *id;*

3. the supervisor or company official must be trained in the recognition of physical indicators of violations of the alcohol regulations, *id.;*

4. the test must be performed by someone other than the person making the "reasonable suspicion" determination. *Id.*

*See* Respondent's Brief at 24. The Secretary also calls to our attention his view, explained in the preamble to the challenged regulations, that a requirement that two supervisors observe the behavior giving rise to "reasonable suspicion" would be impracticable given the time-sensitive nature of alcohol testing. *See* 59 Fed.Reg. 7328.

We agree with the Secretary that the FHWA regulations represent an entirely reasonable effort to ensure both "appropriate safeguards for testing" and "select[ion] ... by nondiscriminatory and impartial methods," as required by the Testing Act. It is, of course, true that the Secretary could have provided more employee protection, as the agency's drug testing rules for motor vehicle operators do. *See* 49 C.F.R. § 391.99(c) (requiring observations by two supervisors).[2] It is a great leap, however, from the notion that more protection *could* have been provided to

the conviction that such additional protection was statutorily *required*—a jump that we are unable to make here.[3]

## B. *Breath Testing and "Split Specimens"*

■ IBT's more substantial challenge concerns DOT's regulations governing testing procedures. Petitioner claims that DOT's failure to compel that "split specimen" samples be retained when alcohol testing is performed using an EBT is inconsistent with the requirements of the Testing Act and must be invalidated.

The Act provides detailed guidelines for DOT's adoption of testing procedures. They state, in pertinent part:

In establishing the [testing] program ... the Secretary shall develop requirements which shall—

(1) promote, to the maximum extent practicable, *individual privacy in the collection of specimen samples;*

(2) with respect to laboratories and testing procedures for controlled substances....;

(A) establish comprehensive standards for all aspects of laboratory controlled substances testing ... including *strict procedures governing the chain of custody of specimen samples collected for controlled substances testing;*

.    .    .    .    .

(5) provide that each specimen sample be subdivided, secured, and labelled in the presence of the tested individual and that a portion thereof be retained in a secure manner to prevent the possibility of tampering, so that in the event the individual's confirmation test results are

**2.** The Secretary's preamble explains that this difference in the regulatory schemes is due to the fact that the symptoms of alcohol consumption are more widely familiar than those of drug use, to the greater ease of detection of alcohol abuse from physical symptoms, and to the more detailed research that has been done on how to train people to observe the signs of alcohol use. *See* 59 Fed.Reg. 7327–28 (1995).

**3.** There is also some suggestion in IBT's brief that the failure to require that "reasonable suspicion" determinations be made by two supervi-

sors violates the unreasonable search and seizure prohibition of the Fourth Amendment. U.S. Const Amend. IV. In *Skinner v. Railway Labor Executives' Ass'n,* 489 U.S. 602, 624–33, 109 S.Ct. 1402, 1417–22, 103 L.Ed.2d 639 (1989), however, the Supreme Court upheld against a Fourth Amendment challenge a testing regime that permitted "reasonable suspicion" determinations to be made by a single supervisor. IBT therefore cannot prevail under the Fourth Amendment.

positive the individual has an opportunity to have the retained portion assayed by a confirmation test done independently at a second certified laboratory....; (6) ensure appropriate safeguards for testing to detect and quantify alcohol in *breath and body fluid samples, including urine and blood,* through the development of regulations as may be necessary....

49 U.S.C.App. § 2717(d) (emphasis added).

Appellant's "split specimen" argument relies heavily on the statutory requirement that "each specimen sample be subdivided...." *Id.* at § 2717(d)(5). Initially, IBT argues that this passage indicates a clear congressional intent that a "specimen sample" be preserved in all testing situations, including breath testing by EBT. IBT maintains that it must therefore prevail, citing the familiar maxim that "the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781.

We fail to find the statute "unambiguous" with respect to the purported requirement of preserving a "split specimen" in breath testing. While the statute does "unambiguously" mandate that each "specimen sample be subdivided ... and that a portion thereof be retained," 49 U.S.C.App. § 2717(d)(5), it does not tell us whether breath testing involves a "specimen sample" at all. The Secretary has consistently maintained, both in promulgating its regulations and before this court, that the split sample requirement does not apply to breath tests because the term "specimen sample" refers only to "liquid body fluids like urine and blood, but not to breath." 59 Fed.Reg. 7344; Respondent's Brief at 13–18. Because we agree that the statute is ambiguous on this point, we again review only to determine whether the agency's interpretation is reasonable. *See id.*

The Secretary claims that several phrases in the statutory language of § 2717(d) support his interpretation. First, subsection (d)(1) refers to the need for "privacy in the collection of specimen samples." Because there is clearly no need for privacy in "collecting" breath, the Secretary argues that Congress could not have intended "specimen sample" to include breath. The Secretary also relies on § 2717(d)(6), which states that the Secretary must "ensure appropriate safeguards for testing to detect and quantify alcohol in breath and body fluid samples, including urine and blood." The Secretary correctly notes that the statute here appears to *contrast* breath with "body fluid samples, including urine and blood." Finally, the Secretary points out that because subsection (d)(5) itself—upon which petitioners rely—provides that the split specimen be used in a confirmation test by a "second certified laboratory," the split specimen requirement must only apply in situations involving a "first certified laboratory." In breath-testing situations, where the parties agree that the test may be accomplished immediately, in the presence of the accused party, no "certified laboratory" is ever involved.

IBT counters that even if DOT's interpretation of the statute is linguistically plausible, it "fails to recognize the primary purpose of a subdivided specimen"—"to provide employees an opportunity to have their specimen subjected to an independent test...." Petitioner's Brief at 12. IBT provides no citation, however, to indicate that Congress, in adopting the "split specimen" requirement, intended to provide an "independent test" safeguard for breath testing. The Secretary, on the other hand, cites legislative history suggesting that the "split specimen" requirement was directed to an entirely different problem. A Senate Report to an earlier version of the Act states that "[t]o ensure complete protection of those employees tested, the reported bill directs that a portion of each sample be retained as a control *in the event that any question should arise with respect to the proper identification and chain of custody of that sample.*" S.Rep. No. 54, 102d Cong., 1st Sess. 32 (1991). The Secretary therefore argues that Congress designed the split specimen requirement to address "chain of custody" problems that may arise when a sample is collected and sent to a laboratory for testing, which does not occur in breath testing. The Secretary also directs us to a statement by the chairman of the Senate committee that considered the Testing Act, who stated that it contains

requirements for split samples, primarily included in the legislation to allow urine samples to be retested. DOT would have the authority to determine that blood samples should be similarly handled. *This specific requirement is not relevant in the case of breath testing* for alcohol, but DOT is directed by this legislation to provide necessary safeguards in this area to ensure the validity of test results.

137 Cong.Rec. 14,770 (Oct. 16, 1991) (statement of Sen. Hollings) (emphasis added). In light of this legislative history, we are unable to conclude that the Secretary's construction of "specimen sample"—limiting the term to bodily fluids like blood and urine—"fails to recognize the primary purpose of a subdivided specimen."

Finally, IBT claims that even if the Secretary's interpretation of the "split specimen" requirement is reasonable, "a *more reasonable* interpretation ... [would] provide an employee the right, in the event of a positive confirmation test, to have his/her breath analyzed at a second certified laboratory" (emphasis added). This argument misapprehends the scope of our review. We have often observed that "[t]he task for the Court of Appeals [is] not to interpret the statute as [we] th[ink] best but rather the narrower inquiry into whether the [agency's] construction [is] 'sufficiently reasonable' to be accepted by a reviewing court...." *See, e.g., National Treasury Employees Union v. United States Merit Systems Protection Board,* 743 F.2d 895, 916 (D.C.Cir.1984) (citing *FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 39, 102 S.Ct. 38, 46, 70 L.Ed.2d 23 (1981)).[4] Because we have determined that the Secretary's interpretation is reasonable, our inquiry is at an end.

### III. Conclusion

Petitioner has failed to demonstrate that the Testing Act requires that "split speci-

men" samples be preserved when breath testing is employed to determine an employee's alcohol level, or that "reasonable suspicion" testing be based on the observations of at least two supervisors. The petition for review is therefore denied.

*So ordered.*

---

4. Petitioner's reply brief introduces for the first time the claim that it is a violation of "due process" not to preserve a driver's breath for independent testing. Petitioner's Reply Brief at 4–9. IBT indicates that, in the criminal context, at least one state court has so found. *People v. Hampton,* 120 Misc.2d 757, 466 N.Y.S.2d 589 (City Ct. of N.Y.1983).

This court, however, has stated that "[c]onsidering an argument advanced for the first time in a reply brief ... is not only unfair to [a respondent] but also entails the risk of an improvident or ill-advised opinion on the legal issues tendered." *McBride v. Merrell Dow Pharmaceuticals, Inc.,* 800 F.2d 1208, 1211 (D.C.Cir.1986). Therefore, "consideration of [IBT's due process argument] is inconsistent with the adversary process and would be inappropriate." *Bradley Mining Co. v. EPA,* 972 F.2d 1356, 1361 (D.C.Cir. 1992) (internal quotation and citation omitted).