THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
EDWARD SADDY, Appellant.

Second Department, December 31, 1981

APPEARANCES OF COUNSEL

*Edward Saddy, pro se,* and *Peter Branti, Jr.,* for appellant.

*Kenneth Gribetz, District Attorney* (*John S. Edwards* of counsel), for respondent.

**OPINION OF THE COURT**

RABIN, J.

This is an appeal by the defendant from a judgment convicting him of criminal sale of a controlled substance in the third degree, and criminal sale of a controlled substance in the fifth degree.

The defendant was indicted for criminal sale of a controlled substance in the third and fifth degrees, and criminal possession of a controlled substance in the third and fifth degrees. The charges arose out of two transactions — one on November 17, 1979, the other on November 21,

1979 — in which the defendant allegedly sold a quantity of phenmetrazine hydrochloride, a stimulant, to undercover Investigator Cole-Hatchard. The undisputed proof at trial established that Cole-Hatchard, then an investigator for the Rockland County Narcotics Task Force, and the defendant had met by chance on October 15, 1979. The defendant had been hitchhiking to Rockland County Community College, and Cole-Hatchard offered him a ride. During the initial encounter, the subject of drugs was broached, and Cole-Hatchard manifested an interest in purchasing some drugs, particularly cocaine.

On October 19, 1979 Cole-Hatchard telephoned the defendant three times in an attempt to obtain drugs. When the defendant met Cole-Hatchard later that day, the defendant telephoned a friend who, he thought, might have "speed". The friend was not home, however, and no sale of drugs was consummated. Furthermore, despite numerous telephone calls by Cole-Hatchard in the ensuing weeks — eight or nine telephone calls according to Cole-Hatchard, even more in the defendant's estimation — no purchase was arranged. Then, on November 16, 1979 Cole-Hatchard happened to meet defendant at a bar called the "Barn". There, defendant told him he had some Preludin which was selling for $2.50 per pill. Though Cole-Hatchard expressed an interest in purchasing the drug, no transaction was consummated at that time, for defendant did not have the drug with him. The following day (November 17, 1979) Cole-Hatchard called defendant and asked whether he had either cocaine or "speed" for sale. Defendant responded that he had four hits of Preludin which were selling for $2.50 per hit. At a meeting later that day, four pills were exchanged for $10.

On November 19, 1979 Cole-Hatchard telephoned defendant and asked if a new supply of "speed" had been received. Defendant responded in the negative. On November 21, 1979 Cole-Hatchard again telephoned defendant and asked if the new supply of "speed" had been received. Defendant answered that it had and that he had about 30 hits which were selling for $2.50 each. A meeting was then arranged for later that day. At the meeting 29 pills were exchanged for $75. The pills were later determined, by

laboratory analysis, to be phenmetrazine hydrochloride, a stimulant. Defendant was arrested on February 25, 1980 after further attempts by Cole-Hatchard to purchase drugs were unsuccessful.

The testimony of Cole-Hatchard, the principal prosecution witness, and the defendant differed mainly with regard to the details of the conversations between the two men. According to Cole-Hatchard, the defendant had stated, at their first encounter, that he "occasionally" dealt in cocaine and "speed". The defendant denied ever making the statement. Cole-Hatchard also stated that the defendant always told him to "keep in touch" so as to arrange a drug sale at some future time. The defendant, who sought to establish a defense of agency, contended that Cole-Hatchard had prodded him, in every conversation, to obtain drugs for him. He made no profit from the sale and became involved in the drug transaction solely to oblige Cole-Hatchard. He also claimed to have told Cole-Hatchard that the Preludin had been obtained from a friend.

At trial it was revealed, for the first time, that the October 19 telephone conversations, as well as other telephone conversations which took place prior to the sales, were recorded. The tapes of the October 19 conversations were admitted into evidence. However, the remaining tapes, which, according to prosecution witnesses, contained no proof of drug sales, had been erased. The erasure of the tapes was authorized by Investigator Comparetto who was charged with the responsibility of vouching, logging, and erasing of tape recordings. Comparetto, who had listened to the tapes, testified that it was "unfeasible" to voucher each tape, and that the task force budget "wouldn't allow it".

Defense counsel argued that the conduct of the police, in failing to preserve the tapes, amounted to a violation of the rule of *Brady v Maryland* (373 US 83). The trial court, however, declined to impose any sanction on the prosecution for its failure to produce the tapes for trial.

At the conclusion of the trial testimony, the charge of criminal possession of a controlled substance in the third degree was reduced, on the People's motion, to the lesser

included offense of criminal possession of a controlled substance in the fourth degree. The jury found the defendant guilty of all charges submitted. The defendant was sentenced, as a second felony offender, to an indeterminate prison term of four and one-half to nine years on the count of criminal sale of a controlled substance in the third degree and a concurrent term of two to four years on the count of criminal sale of a controlled substance in the fifth degree. The possession counts were dismissed as lesser included offenses.

The principal issue raised by the instant appeal is whether the conduct of the police, in erasing the tapes, warrants reversal of the defendant's convictions. The defendant contends that the tapes which were destroyed were exculpatory, and discoverable under *Brady v Maryland* (*supra*) and that the People should be sanctioned because of their destruction. The People argue that the judgment of conviction should be affirmed since the police did not act in bad faith in destroying the tapes, and there was no proof that the tapes, in fact, would have aided the defense.

Under *Brady v Maryland* (*supra*) the prosecution is required to disclose, in advance of trial, evidence which is favorable to the accused. In order to safeguard the defendant's rights under *Brady,* the prosecution, as well as law enforcement officials, are under a duty to diligently preserve all materials which may be subject to disclosure (*United States v Bryant,* 439 F2d 642). It is not for the prosecution, or the police, to select which materials should be preserved, and which should be destroyed. Were law enforcement officials empowered to pick and choose the materials deemed worthy of preservation, then the due process rights guaranteed by *Brady* would be shallow indeed; *Brady* could be circumvented by merely destroying evidence unfavorable to the prosecution before it is demanded by the defendant (see *United States v Bryant, supra,* p 648).

In the case at bar, law enforcement officials, purportedly for reasons of economy, have erased a series of tape recordings of conversations between a law enforcement official and the defendant. While the contents of the recordings will never be known, it may well be that the recordings

would have substantiated the defendant's claim that he had merely acted as the undercover officer's agent in obtaining drugs for the latter's use. Clearly, the police, through their misconduct, have violated the mandate of *Brady* and *Bryant*. The question remains, however, whether the prosecution should be sanctioned because of the destruction of potential *Brady* material. Disposition of the case must turn on "the degree of negligence or bad faith [on the part of law enforcement officials], the importance of the evidence lost, and the evidence of guilt adduced at trial" (*United States v Bryant, supra,* p 653; see *United States v Miranda,* 526 F2d 1319).

The tapes in question did not simply disappear through the neglect or inadvertence of law enforcement officials. They were destroyed by task force officials because they were not inculpatory of the defendant. Of course, we cannot say that the officers were motivated by a "bad faith" desire to suppress evidence favorable to the defense. It may well be, as Investigator Comparetto asserted at trial, that the tapes were destroyed for reasons of economy, rather than strategy. Nonetheless, since it was the deliberate actions of law enforcement officials which resulted in the destruction of evidence, they cannot be absolved of responsibility for its loss.

Nor can it be said that the evidence lost was unimportant. At trial the defendant presented a viable defense of agency. He claimed that he obtained the Preludin solely to accommodate Cole-Hatchard, who prodded the defendant continually to obtain drugs for his use. With regard to the telephone conversations between October 19, 1979 and November 17, 1979, the defendant claimed that Cole-Hatchard repeatedly told him that he "needed" drugs, and defendant invariably responded that he couldn't get him any. Were this version of the conversations corroborated by the tapes, it would have lent credence to the agency defense.

It is significant, in this regard, that the prosecution witnesses who heard the tapes — Cole-Hatchard and Comparetto — did not present an altogether convincing, or even a consistent, account of their contents. Thus, Comparetto claimed that the taped conversations contained noth-

ing at all pertaining to the sale of drugs. But Cole-Hatchard admitted that in most of the conversations he asked for, or at least mentioned, drugs. Consequently, despite the fact that the evidence offered by the prosecution was strong, there is a significant possibility that a jury, had it been able to hear the destroyed tapes, would have acquitted the defendant of the sale counts. That the question of agency was seriously considered by the jury is indicated by the fact that during their deliberations the jurors requested, and received, additional instructions on this issue.

In the circumstances, we conclude that the prosecution should be sanctioned for the erasure of the tapes, and that the only appropriate disposition is reversal of the two sale convictions. Since the prosecution, by its conduct, has deprived the defendant of potentially valuable material relating to his agency defense, it would be unfair to subject the defendant to a new trial on the sale counts of the indictment, even if portions of Cole-Hatchard's testimony were ordered stricken.

The defendant's guilt of possession of a stimulant on both occasions was, however, proven by uncontroverted evidence, and unaffected by the defense of agency (*People v Lam Lek Chong*, 45 NY2d 64). The jury, by its verdict, indicated its belief that the defendant possessed the specified quantities of a stimulant. Therefore, defendant's guilt of criminal possession of a controlled substance in the fourth degree (Penal Law, § 220.09, subd 1), and criminal possession of a controlled substance in the seventh degree (Penal Law, § 220.03) relating, respectively, to the November 21 and November 17 transactions, was proven. A new trial on the possession counts, which are lesser included offenses of the sale counts, is not warranted (see CPL 470.15, subd 2). The case should be remitted to the County Court for imposition of appropriate sentences on the possession convictions.

We have examined the remaining contentions advanced by the defendant, and find them to be without merit.

HOPKINS, J. P., MANGANO and COHALAN, JJ., concur.

Judgment of the County Court, Rockland County, rendered October 31, 1980, modified, on the law, by vacating

the conviction of criminal sale of a controlled substance in the third degree and criminal sale of a controlled substance in the fifth degree and the sentences imposed thereon and substituting therefore the convictions of criminal possession of a controlled substance in the fourth degree and criminal possession of a controlled substance in the seventh degree. As so modified, judgment affirmed and matter remitted to the County Court for resentencing.