THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
HERBERT HAUPT, Appellant.

Second Department, May 18, 1987

### APPEARANCES OF COUNSEL

*Joseph F. DeFelice* for appellant.

*John J. Santucci, District Attorney (Deborah Carlin Stevens*
of counsel), for respondent.

### OPINION OF THE COURT

BRACKEN, J.

The principal issue presented for our consideration on this
appeal is whether the good-faith loss or destruction of evi-
dence by law enforcement officials over a period of approxi-

mately 16 years, during which time the defendant was not competent to stand trial, served to deprive him of a fair trial. We affirm the judgment, holding that, under the circumstances, there was no basis for dismissal of the indictment or the imposition of some lesser sanction upon the prosecution because of these losses.

In 1967, the defendant was indicted and charged with the crime of murder in the first degree (former Penal Law § 1044) arising out of the shooting of his neighbor, Anthony Licciardo, on February 6, 1967. In March 1967, the defendant, having been diagnosed as a paranoid schizophrenic, was found not competent to stand trial and was thereafter hospitalized continuously in various State institutions. In 1983, some 16 years later, he was found fit to proceed and was thereafter brought to trial.

At both his combined *Mapp* and *Huntley* hearings and the ensuing trial, it was established that considerable evidence with respect to the shooting was no longer in the possession of law enforcement authorities. The former detective who had been in charge of the investigation testified from memory as to a statement made to him by the defendant in which the defendant admitted the shooting. This statement had been recorded by the detective in his memo book, which he had thereafter discarded upon his retirement in 1969. So far as the detective was concerned, his contact with the case had terminated upon his retirement, and the case had thereafter been reassigned. However, he testified that the case stood out in his mind because it had been only the third nonvehicular homicide that he had investigated. The detective described the various police reports that would have been prepared in the course of a homicide investigation, but he had no knowledge, except with regard to a certain "DD 19" form which indicated that the defendant shot Licciardo, whether any other reports prepared in connection with the case had been destroyed by the police department.

The detective also testified that he had removed the defendant to the precinct from the crime scene and, at the precinct, an Assistant District Attorney had spoken with the defendant in the presence of a stenographer. The detective, however, had no idea what the defendant had said to the Assistant District Attorney. At the *Mapp-Huntley* hearing, the prosecutor disclosed that he had not been aware of any statement made by the defendant to any Assistant District Attorney until the detective so testified. It was thereafter stipulated at trial that

a transcript of any conversation between the Assistant District Attorney and the defendant could not be located and, also, that after a thorough search of the records, no other police reports could be located either. It was further stipulated that the rifle used by the defendant in the shooting had been destroyed in 1972 by the police department's property clerk.

The defendant, who presented an insanity defense, contends on appeal, as he did in the trial court, that he was denied due process of law by virtue of the loss and destruction of evidence prior to his trial. He further claims that since the items in question can never be obtained or reconstructed, the indictment must be dismissed. Criminal Term denied the defendant's motion for dismissal and also refused to grant a hearing on that issue, stating, in part, that "through the passage of time I have no reason to believe that there would be anyone in the Police Department who could give any satisfactory explanation as to where the memos or reports might be".

We find that dismissal of the indictment was unwarranted under the facts and circumstances of this case. Any harm resulting from the loss of evidence over the 16-year period was negligible, and dismissal would be both disproportionately drastic and unnecessary in order to preserve the defendant's right to a fair trial.

The prosecution clearly has an obligation to disclose to the defense any evidence which is discoverable and which is in its possession *(United States v Bryant,* 439 F2d 642, 647; *People v Saddy,* 84 AD2d 175, 178). Indeed, the disclosure of all evidence which might lead the jury to entertain a reasonable doubt about the guilt of the accused is required by due process; the test is to be applied liberally *(United States v Bryant, supra,* at 648). A corollary of this duty to disclose is the obligation to preserve evidence until a request for disclosure is made, since any other rule would facilitate evasion of the disclosure requirements *(People v Kelly,* 62 NY2d 516, 520). Further, it is not for law enforcement authorities to decide what should be preserved and what should be destroyed *(People v Saddy, supra,* at 178).

Thus, where discoverable evidence is lost, the People face the imposition of sanctions unless they sustain their heavy burden of establishing that diligent, good-faith efforts were made to prevent the loss of such evidence *(People v Kelly, supra,* at 520; *United States v Bryant, supra,* at 652). The severity of the sanction to be imposed will depend upon the

degree of negligence or bad faith exhibited by law enforcement officials, the importance of the evidence lost and the evidence of guilt adduced at trial *(People v Close,* 103 AD2d 970; *People v Saddy, supra,* at 179). "[T]he drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm done by the loss of evidence" *(People v Kelly, supra,* at 521; *see also, People v Emmons,* 99 Misc 2d 941, 943). In essence, the determination of an appropriate sanction should be made on a case-by-case basis, and an assessment should be made "of the government's culpability for the loss, together with a realistic appraisal of its significance when viewed in light of its nature, its bearing upon critical issues in the case and the strength of the government's untainted proof" *(United States v Grammatikos,* 633 F2d 1013, 1020).

In this case, the imposition of sanctions was unwarranted. Initially, the matter is somewhat remarkable in view of the 16-year period of time between arrest and trial occasioned by the defendant's incompetency; although the law enforcement authorities should have maintained the evidence in this case, the failure to do so reasonably may be attributed to this long delay. Moreover, aside from the rifle and bullet casings which were destroyed in accordance with the property clerk's procedure some five years after the crime, there exists neither evidence nor reason to conclude that the police reports or transcript of the defendant's statement were deliberately destroyed. Therefore, the People's burden of demonstrating that the losses did not result from bad faith or intentional destruction was met *(see, People v Astwood,* 113 AD2d 946; *People v Caple,* 106 AD2d 511).

Furthermore, a realistic comparison of the lost evidence with the other evidence in this case demonstrates that the imposition of the sanction of dismissal is not required. The impact of the lost rifle, casings and police reports was minimal, as there was no true dispute as to how the crime occurred. Also, the main prosecution witnesses were extensively and effectively cross-examined with respect to the missing evidence. With regard to the lost transcript of the defendant's statement to an Assistant District Attorney after his arrest, we are persuaded that the loss of this statement did not deprive the defendant of a fair trial. First, there was no deliberate suppression of the statement, inasmuch as the prosecutor was not even aware that a statement had been made until the detective revealed it at the *Mapp-Huntley*

hearing. Second, the loss of the statement effectively prevented the introduction by the prosecution of evidence concerning it at the trial and, in addition, the entire subject of missing reports provided defense counsel with a basis for cross-examination and for comment in summation on the absence of such reports. In fact, defense counsel made the direct statement to the jury that his client was not receiving a fair trial because of the unavailability of the evidence in question. We thus conclude that the jury was aware of the destruction of the evidence in question and could therefore take this knowledge into account in assessing the strength of the People's case (see, *United States v Miranda*, 526 F2d 1319, 1324, 1328, *cert denied* 429 US 821).

Turning briefly to certain other arguments advanced by the defendant on appeal, we conclude that the defendant's guilt was established beyond a reasonable doubt. While there was conflicting psychiatric testimony as to defendant's sanity at the time of the homicide, the resolution of these conflicting expert opinions was a matter for the jury and, absent a serious flaw in the opinion testimony of the People's expert psychiatrist, which we do not find, the jury's finding of sanity should be left undisturbed (see, *People v Jandelli*, 118 AD2d 656).

The sentence of life imprisonment imposed was not illegal (see, *People v Pepples*, 32 AD2d 1041, *affd* 27 NY2d 785).

We have reviewed the defendant's remaining contentions and find them to be without merit.

MOLLEN, P. J., BROWN and SULLIVAN, JJ., concur.

Ordered that the judgment of the Supreme Court, Queens County, rendered November 18, 1983, is affirmed.