86 N.Y.2d 565 (1995)
658 N.E.2d 996
635 N.Y.S.2d 123
The People of the State of New York, Respondent,
v.
Lesly Joseph, Appellant.
Court of Appeals of the State of New York.
Argued September 20, 1995.
Decided October 31, 1995.
Michael C. Taglieri, Philip L. Weinstein and Daniel L. Greenberg, New York City, for appellant.
Richard A. Brown, District Attorney of Queens County, Kew Gardens (Linda Cantoni and Steven J. Chananie of counsel), for respondent.
Chief Judge KAYE and Judges SIMONS, SMITH and CIPARICK concur with Judge TITONE; Judges BELLACOSA and LEVINE dissent in separate opinions.
*567 TITONE, J.
A witness's pretrial statements must generally be disclosed to the defense before opening argument (see, CPL 240.45), but the failure to make such timely disclosure will not lead to any sanctions if the undisclosed matter is the "duplicative equivalent" of material that has previously been disclosed. The question presented here is whether the latter principle may be applied when a document subject to Rosario disclosure has been destroyed and a testimonial reconstruction is required to establish its contents. Concluding that the fallibility of human memory makes the necessary flawless reconstruction all but impossible, we hold that a document that has been destroyed can never be deemed the "duplicative equivalent" of one that exists and remains available for inspection.
At about 10:00 P.M. on October 2, 1990, a narcotics enforcement officer, Robert Wasson, who was stationed on the roof of a nearby apartment building, observed a series of transactions that he interpreted as drug sales. According to the trial evidence, the officer watched through binoculars as three separate individuals approached the same individual and exchanged money for what appeared to be vials of cocaine. After each transaction, Wasson radioed his arrest team. One member of this team, an Officer Wynne, arrested one of the buyers at about 10:30 P.M., recovering two vials of crack cocaine. According to Wynne's trial testimony, these vials were immediately placed in an envelope on which he wrote the arrestee's name and the location and time of arrest. At approximately 11:25, Wynne received another radio message from Wasson. As a result, he arrested defendant, whom he intercepted about *568 two minutes later as he left a nearby liquor store. Wynne found no money on defendant's person, but he did find one cocaine vial like the ones that had been recovered from the other arrestee. He sealed this vial in a separate envelope, once again writing down the arrestee's name and the time and place of arrest.
Upon returning to the precinct, Wynne vouchered the vials. Although Wasson promptly identified defendant as the seller and the other arrestee, Peter Gerzbach, as the buyer, Wynne conceded that the voucher prepared for Peter Gerzbach initially indicated that he was the seller. Defendant was subsequently charged with third degree criminal sale of a controlled substance as well as third degree criminal possession.
The People timely disclosed the complaint report and the other documents that were prepared at the precinct. However, the envelopes in which Officer Wynne had placed the two arrestees' cocaine vials were never turned over. During the trial, Wynne acknowledged that he had destroyed the envelopes after transferring the information they contained to his on-line booking sheet and complaint report.
At the close of evidence, defense counsel asked the court to give the jury an adverse-inference charge regarding the destruction of the arrest envelopes. The People opposed this request, noting that "[t]he officer has stated * * * that all the information on the envelopes [had been] transported to his reports." The trial court denied the defense motion without further comment. The jury ultimately found defendant guilty of the charged crimes.
On his appeal from the judgment of conviction, defendant argued that the destruction of the envelopes constituted a Rosario violation. However, the Appellate Division rejected this argument, holding that "[t]he information contained on the destroyed security envelopes * * * w[as] the `duplicative equivalent' of that contained in the on-line booking sheet and complaint reports * * * turned over to the defendant prior to trial." (205 AD2d 555, 556.) The Court also concluded that the information purportedly contained on the envelopes "was not relevant to the issue of whether the defendant was the individual who[m] the surveilling officer observed selling cocaine." Contrary to the Appellate Division's holding, we conclude that the destroyed envelopes cannot be considered the "duplicative equivalent" of the disclosed arrest material.
*569 In People v Consolazio (40 N.Y.2d 446, 454), the Court determined that certain undisclosed worksheets were Rosario material but concluded that a sanction for the prosecution's withholding of the worksheets was unnecessary because an examination of the document revealed that the statements they contained "were the same" as the statements made in the disclosed Grand Jury minutes, "the only difference being as to the particular form in which [the] statements were recorded." This holding was subsequently characterized as a "commonsense" limitation on the scope of the People's Rosario obligation (People v Jackson, 78 N.Y.2d 638, 644).
Since Consolazio was decided, we have had occasion to explain what is meant by the duplicative-equivalent "exception" to the Rosario rule (see, People v Jones, 70 N.Y.2d 547, 551, n 3). We stated in People Ranghelle (69 N.Y.2d 56, 63), for example, that "[s]tatements are not the `duplicative equivalent' of previously produced statements * * * just because they are `harmonious' or `consistent' with them." A statement cannot be a "duplicative equivalent" if it contains even minor differences resulting from errors in transcription (id., at 61-62). Thus, in People v Young (79 N.Y.2d 365, 370), we rejected a duplicative-equivalence claim because the undisclosed report mentioned details that the disclosed report did not. We also stated that the duplicative-equivalent exception cannot be invoked unless the two statements in question came from the same source (id., at 370).
In light of the need for a precise correlation between the undisclosed and disclosed material, this Court has previously assumed without discussion that a visual inspection of both documents is necessary (see, People v Adger, 75 N.Y.2d 723, 725; People v Quinones, 73 N.Y.2d 988, 989; People v Consolazio, supra, at 454). Indeed, in People v Wallace (76 N.Y.2d 953, 955), where the undisclosed document was unavailable for inspection, we stressed that the document's absence made it impossible to determine whether the material it contained was duplicated elsewhere.
We now make explicit what was implicit in our holding in Wallace, i.e., that a document that has been lost or destroyed and is therefore no longer available for judicial inspection cannot be deemed the "duplicative equivalent" of Rosario material that has previously been disclosed. Our holding is based on our practical recognition that a document's unavailability poses an insurmountable barrier to making the detailed comparison and assessment that our decisions in Ranghelle and Young require.
*570 Contrary to the People's contention, a police officer's testimony regarding the contents of a lost or destroyed police document is not an acceptable substitute for the document itself, nor is it a sufficient basis from which the court could infer the requisite duplicative equivalence. Even where a document has purportedly been transcribed verbatim, inadvertent errors, omissions and deletions can occur, giving rise to precisely the kind of discrepancies that are most useful in cross-examination (see, e.g, People v Young, supra, at 369-370; People v Ranghelle, 69 N.Y.2d 56, 63-64, supra; see also, People v Kass, 25 N.Y.2d 123). Since the transcriber is likely to be unaware of these errors, that individual's testimony cannot provide the necessary assurance that the two documents were alike in all respects.
Nor may the use of such testimony as a substitute for the destroyed document be justified under principles allowing the use of "secondary evidence" where the "best evidence", i.e., the original document, has been lost or destroyed (see, e.g., Schozer v William Penn Life Ins. Co., 84 N.Y.2d 639). The "best evidence" rule requires a showing that the loss or destruction of the document has been sufficiently explained and that the mishap was an innocent one (id., at 644). Such a foundational showing cannot ordinarily be made in this context, since a law enforcement officer's deliberate destruction of a witness's statement is inconsistent with the obligation implicitly imposed by the Rosario rule to preserve such statements for disclosure to the defense. Moreover, as previously noted, given the importance of even the smallest of details, the proponent cannot in these circumstances satisfy the "heavy burden" of establishing that the transcriber's testimony from memory "is a reliable and accurate portrayal of the original" (id., at 645).
Inasmuch as the destroyed envelopes in this case cannot be considered the duplicative equivalent of the disclosed police reports, the exception to the Rosario rule of disclosure is unavailable. Accordingly, a Rosario violation plainly occurred, and it remains to be determined whether, as a matter of law, the trial court erred in declining to grant defense counsel's request for an adverse-inference instruction as a sanction for this prosecutorial error.
We have previously held that "[w]here the People fail to exercise due care in preserving Rosario material, and the defendant is prejudiced thereby, `the [trial] court must impose an appropriate sanction'" (People v Wallace, 76 N.Y.2d 953, 955, supra, *571 quoting People v Martinez, 71 N.Y.2d 937, 940). Since some showing of prejudice is essential, we have also stated that "the trial court must try to determine the content of the missing material" (People v Banch, 80 N.Y.2d 610, 616). However, since a precise replication of a missing document cannot be achieved, the trial court's inquiry must ordinarily be limited to ascertaining the document's subject matter and approximate contents with a view toward determining its relevance (see, e.g., People v Haupt, 71 N.Y.2d 929).
In this case, defendant has made a colorable claim of prejudice. Defendant's position at trial was that he was the buyer, that the other arrested individual was the seller and that at some point the police had confused the two arrestees' roles. This claim was supported by the facts that the crime of criminal sale had been inscribed on the voucher for the vials recovered from Gerzbach, that defendant had been unable to afford a $1.40 bottle of wine immediately before he was arrested, and that Gerzbach, in contrast, had had substantially more money on his person at the time of arrest. Given the defense's theory, information contained on the destroyed envelopes, including the times and locations of the respective arrests, might have provided useful additional support for the defense position. For example, if the envelope containing two cocaine vials had been inscribed with defendant's name rather than Gerzbach's, it would have advanced the defense's contention that he was the buyer whom Wasson had observed exchanging money for some "vials" of cocaine. Notably, only one of the two destroyed envelopes contained more than one vial.
We are not persuaded by the People's contention that defendant's claim of prejudice is too speculative. Since it was the conduct of the police that resulted in the loss of the envelopes and made it impossible to know whether the information they contained was consistent with the People's position at trial (see, People v Wallace, supra, at 955), the People cannot now be heard to complain that the defendant's showing of prejudice is not sufficiently definite and clear.[*]
Significantly, this is not a case in which the relevance of the *572 lost document was marginal (see, People v Haupt, 71 N.Y.2d 929, supra). Moreover, unlike People v Haupt (supra, at 931), which is cited by the dissent, it is not a case in which defense counsel sought the "drastic remedy" of dismissal of the charges. Nor is it a case where the less drastic but nonetheless stringent sanction of witness preclusion was sought (see, People v Martinez, supra). In this case, the requested sanction  an adverse-inference instruction  was appropriate and proportionate to the harm that resulted from the destruction of the envelopes. Indeed, in People v Martinez (supra), where we found the possibility of prejudice "remote", this Court held that an adverse-inference instruction was an appropriate sanction for the loss of certain police officer notes that may have once existed.
It may be true, as the dissenter opines, that no "bad faith" was involved in the Officer Wynne's destruction of the envelopes. However, it is also true that the destruction of the envelopes was a deliberate act undertaken by a law enforcement officer who had a duty to preserve potential Rosario material. Thus, this case is a far cry from People v Haupt (supra), in which the material in question was accidentally destroyed in accordance with routine property-room procedures during the 16-year hiatus between the defendant's indictment and his trial. It is also unlike People v Martinez (supra), in which the officer who ostensibly created the document in question was simply not available at the time of trial and an "intensive investigation" failed to reveal any of the officer's notes.
Given the articulable showing of prejudice that the defendant made, the unavailability of the documents from which a less conjectural showing might have been made and, finally, the circumstances of the documents' loss, the trial court's refusal to impose the limited sanction counsel requested constituted an abuse of discretion as a matter of law (see, People v Wallace, supra).
Accordingly, the order of the Appellate Division should be reversed, and a new trial ordered.
BELLACOSA, J. (dissenting).
Because this case cuts yet another functional per se reversal channel into the prejudice-remedy phase of Rosario permutations, I respectfully dissent. *573 My vote and reason are expressed separately to emphasize what I perceive to be an urgent need for legislative reexamination and remedial action, including consideration of open prosecution file pretrial discovery (People v Banch, 80 N.Y.2d 610, 625-627 [Bellacosa, J., dissenting]; People v Jones, 70 N.Y.2d 547, 553-557 [Bellacosa, J., concurring]). The unabating variety of difficulties in this Rosario area of criminal adjudication suggests that reform of the criminal discovery tension with pretrial open prosecution file review by defendants, rather than subjecting jury-tried cases to Rosario-type per se reversals years later, is in order. Such a change or some other reasonably calibrated reformulation should engender more benefits than disadvantages and will undoubtedly bring about a greater degree of ultimate justice among the parties.
LEVINE, J. (dissenting).
On the basis of the issues actually raised by the defense at the trial, I think the Appellate Division correctly concluded that no prejudice to the defendant has been shown here as a result of the loss of the Rosario materials in this case. The Rosario material consisted of the envelopes the arresting officer temporarily used to store the vial of drugs taken from defendant upon his arrest and the two vials taken from Peter Gerzbach, the other arrestee, until the vials were later that night placed and sealed in other evidence envelopes for transmittal to the police laboratory for drug testing. Thus, although I agree with the majority that the testimony of the arresting officer regarding the content of his notations on the missing envelopes cannot be regarded as the "duplicative equivalent" (People v Consolazio, 40 N.Y.2d 446, 454) of the envelopes themselves, I would, nonetheless, affirm the conviction.
Our prior cases dealing with nonwillful, merely negligent loss or destruction of Rosario materials, such as in the instant case, unambiguously hold that, only when there has been some demonstrable prejudice to the defendant in being deprived of Rosario materials, is it an abuse of discretion for the trial court not to impose some sanction, such as the adverse inference charge requested here. Thus, in People v Banch (80 N.Y.2d 610) we held that "where the People have failed to exercise due care in preserving Rosario material and the defendant is prejudiced by the loss or destruction, it is an abuse of discretion for the court to impose no sanction" (id., at 616 [emphasis supplied]). And in People v Haupt (71 N.Y.2d 929) we affirmed a conviction in which the trial court declined *574 to impose any sanction for lost Rosario materials, where the Appellate Division concluded, as it did here, that "[a]ny harm resulting from the loss of evidence * * * was negligible" (128 AD2d 172, 174).
Our prior cases also point the way to the analysis necessary to determine whether the defendant was prejudiced by being deprived of the use of lost or destroyed Rosario materials. First, the purpose of the Rosario rule is not to protect a defendant's general right to discovery of the People's evidence, nor to aid in the disclosure of any and all exculpatory material in the prosecution's files; it is solely designed to aid the defense in effective cross-examination of the People's witnesses. "As long as the statement relates to the subject matter of the witness' testimony and contains nothing that must be kept confidential, defense counsel should be allowed to determine for themselves the use to be made of it on cross-examination" (People v Rosario, 9 N.Y.2d 286, 289 [emphasis supplied]). And in People v Ranghelle (69 N.Y.2d 56) we described the further development of our Rosario jurisprudence as follows: "[w]e have periodically refined the rule to ensure that a defendant `receives the full benefit of a [prosecution] witness' statements for impeachment purposes'" (id., at 62, quoting People v Poole, 48 N.Y.2d 144, 149 [emphasis supplied]).
Second, in ascertaining whether a defendant suffered prejudice as a result of the loss of a witness' prior statement, the content of missing materials is not open to sheer speculation by the defense. Some effort must be made by the trial court to ascertain their likely contents, from the testimony of the witness, or of the person who recorded the witness' missing statement, or other evidence in the record. Thus, we said in People v Banch that, in cases involving lost or destroyed Rosario materials, "the trial court must try to determine the content of the missing material and the circumstances of the loss or destruction" (80 NY2d, at 616, supra [emphasis supplied]; see also, id., at 621 ["the trial court did not conduct the inquiry that is required when Rosario material is lost or destroyed  an inquiry into the contents of the material and the circumstances of its disappearance"]).
Finally, once the likely general content of the lost material is ascertained, a critical factor in determining prejudice is the relevancy of the subject matter of the material to some contested issue in the case. To illustrate, in People v Haupt the loss of the investigating officer's notebook and other investigative *575 police reports in that murder case  prototypical Rosario materials  were found nonprejudicial because "[t]he lost evidence had little or no relevance" to the "crucial issue at this trial [i.e.,] whether the defendant was legally sane at the time of the shooting" (71 NY2d, at 931, supra [emphasis supplied]). Conversely, in People v Wallace (76 N.Y.2d 953) we concluded that the imposition of a sanction for losing the materials was required, because in that "buy and bust" drug prosecution, they contained contemporaneous descriptions of the suspect seller recorded by the undercover and arresting officers, which "would have been helpful to defendant in cross-examining the officers, given the importance of the identification issue in the case" (76 NY2d, at 955 [emphasis supplied]).
Before applying these principles from our Rosario precedents to this case, a brief review of the evidence at the trial is necessary. The evidence incriminating defendant consisted of the testimony of Police Officers Wasson and Wynne of the New York City Police Department's 105th Precinct (Queens) Narcotics Enforcement Unit at the time of defendant's arrest. Shortly after 10:00 P.M., on the night of the arrest, Officer Wasson, equipped with binoculars and a walkie-talkie two-way radio, was stationed at an observation post on the roof of a three-story building at the well-lighted intersection of 220th Street and Hempstead Avenue, Queens. That location was one of 19 "target areas" for drug traffic in the 105th Precinct. He testified to observing a group of four or five African-American men standing in a circle conversing. At about 10:30 P.M. Officer Wasson observed a white male, subsequently identified as Peter Gerzbach, riding a bicycle to the intersection and coming to a stop, at all times remaining on the bicycle. Gerzbach was wearing a camouflage hat, camouflage jacket, blue jeans and white sneakers. After Gerzbach stopped, defendant, described by Officer Wasson as a bearded black male, wearing a dark or black jacket, blue jeans and white sneakers, left the group and approached Gerzbach. After a brief conversation, Gerzbach reached in his pocket and handed defendant some money. Defendant then reached in his pocket and handed Gerzbach two vials, whereupon Gerzbach left the scene on his bicycle. Officer Wasson radioed Officer Wynne (located in an unmarked police car several blocks away) giving him Gerzbach's description and the direction in which he was going. Shortly thereafter, he received Wynne's report of Gerzbach's arrest. Officer Wasson continued his surveillance of the intersection, observing defendant in two other similar transactions, *576 neither of which successfully led to the buyer's arrest. He also reported and described to another member of the police apprehension team a transaction leading to the arrest of a different seller and buyer.
At about 11:25 P.M. that night, Officer Wasson saw defendant leaving the scene, apparently for the night. He radioed Officer Wynne defendant's description and where he was going. After defendant's arrest, Officer Wasson made confirmatory identifications of defendant and Gerzbach.
Officer Wynne testified to arresting Gerzbach on his bicycle after receiving Officer Wasson's report and finding on his person two vials containing a substance he tentatively identified as cocaine. He placed and sealed both vials in a small plain envelope, marking on the envelope Gerzbach's name and the time and location of the arrest. Officer Wynne handcuffed Gerzbach, put him in the back seat of the police car and placed his bicycle in the trunk. He then resumed his previous station awaiting further report of drug transactions from Officer Wasson.
Following Officer Wasson's report of defendant's departure from the intersection under surveillance, Officer Wynne testified that he spotted defendant several blocks away from the intersection going into a liquor store. Officer Wasson placed defendant under arrest immediately upon his exit from the liquor store with his purchase of a bottle of wine. He recovered from defendant's person one vial of what apparently was cocaine. That vial was placed in another envelope on which Officer Wynne noted defendant's name and the time and location of the arrest. Defendant was then handcuffed and placed next to Gerzbach in the police car.
Upon subsequently returning to the station house that night to process defendant's and Gerzbach's arrests, Officer Wynne testified that he transferred the information he marked on the envelopes containing the seized cocaine vials to his "on-line" booking sheet and complaint report. He then opened the envelopes and placed and sealed the two vials recovered from Gerzbach in a single brown evidence envelope used for transmittal of drug evidence to the police laboratory for testing, signing the envelope with his shield number over the seal and also giving the evidence a voucher number with other identifying data. Officer Wynne repeated that procedure with respect to the vial taken from defendant's person, transferring that vial to a separate evidence envelope. He then apparently *577 discarded the two plain envelopes used initially and temporarily for the purpose of separately storing the cocaine vials at the time of the arrests of Gerzbach and defendant. Defendant has not contended that in doing so, Officer Wynne was acting in bad faith with any intention of destroying or otherwise depriving the defense of potential Rosario materials. The notations Officer Wynne made on these two missing envelopes are the Rosario materials upon which this appeal is based. The remainder of the prosecution's case consisted of the testimony of the two police chemists who tested the contents of the vials and confirmed that they consisted of cocaine.
Defendant called only one witness, the manager of the liquor store where he purchased a bottle of wine immediately before his arrest. The manager recalled that defendant came into the store "[l]ate in the evening. Ten, 11:00." He testified that the bottle of wine cost $1.40 and defendant was short about 20 or 25 cents, but he sold it to him anyway, because defendant was a regular customer. He also saw defendant being arrested as he left the store.
The theory of the defense in this case, from his attorney's opening statement to summation, was that Officer Wasson, because of the distance, lighting and maneuvers to avoid detection at his observation post above the intersection, had mistakenly identified defendant as seller and Gerzbach as buyer in the transaction he observed between them, whereas the converse was the actual fact. The defense relied upon (1) the testimony of the liquor store manager that defendant gave him his last $1.20 to buy wine, a circumstance inconsistent with his receipt of money in several drug sales; (2) that on the voucher Officer Wynne made out for transmittal of the drug vials seized from Gerzbach, for his designation of the offense under investigation, Officer Wynne wrote "CSCS", for criminal sale of a controlled substance; and (3) that the chemists' descriptions of the textures of the cocaine seized from Gerzbach and from defendant were different, suggesting, according to defense, that they did not all come from the same individual.
Based upon the foregoing evidence and the theory of the defense as framed in argument and cross-examination, the Appellate Division correctly concluded that no prejudice was shown here such as to mandate the imposition of any sanction for the negligent loss of Rosario materials. As our cases hold, the only legitimate use as Rosario materials of Officer *578 Wynne's notations on the lost envelopes was the impeachment of his testimony (see, People v Rosario, supra; People v Ranghelle, supra). The defense, however, did not attack Officer Wynne on cross-examination nor comment adversely on his testimony in summation. Indeed, under its theory of Officer Wasson's erroneous role reversal of the two arrested suspects, the defense had no reason to cast any doubt on Officer Wynne's credibility. Thus, in summation, defense counsel stated: "now, the DA's case is based upon the testimony of Officer Wasson, basically. The arresting officer really had no knowledge of what transpired on 220th Street and Hempstead Avenue."
Furthermore, the trial court, performing its obligation imposed by Banch (supra) to ascertain the contents of the missing Rosario materials, found that this consisted solely of Wynne's notation on each envelope of the name of the arrestee and the time and location of the arrest. That finding was reiterated by the Appellate Division, and should be beyond our power to review. Even if not, in view of the limited purpose of the missing envelopes for the separate, temporary storage of the vials taken from the arrestees until they could be vouchered and transferred to proper evidence envelopes at the station house, there is absolutely nothing in the record to suggest any different or additional content to Wynne's notations on the missing envelopes. Thus, there is nothing but pure speculation to defendant's assertions, made for the first time in his brief on appeal, that the missing (empty) envelopes might have additional notations that would somehow establish that the two vials Wynne testified he recovered from Gerzbach were in fact seized from defendant, and thereby would have supported the defense theory that that defendant was the buyer in his transaction with Gerzbach. Also speculative are defendant's alternative suggestions, also made for the first time on appeal, that the envelopes might have contained the names of different arrestees than either defendant or Gerzbach, or yet may have contained some other, undescribed exculpatory material. Giving any weight to such speculation on the contents of the missing Rosario materials would effectively remove the requirement of the existence of prejudice as a condition precedent to a mandatory sanction for lost or destroyed Rosario materials. It would be impossible to demonstrate the absence of prejudice from the deprivation of every conceivable content of the lost or destroyed materials.
The majority engages in just that kind of speculation in *579 supposing that the missing, empty envelopes "might have provided useful additional support for the defense position * * * if the envelope containing two cocaine vials had been inscribed with defendant's name rather than Gerzbach's" (majority opn, at 571 [emphasis supplied]). Had the empty envelopes been preserved and turned over to the defense, they only would have disclosed that one envelope had noted on it defendant's name and time and location of arrest, and the other bore the notation of Gerzbach's name and time and location of arrest. The envelopes would not have disclosed which one was used to contain the vials seized from Gerzbach and which contained the single vial taken from defendant. Therefore, it seems irrefutable that the envelopes would have disclosed absolutely nothing indicative of which vials were seized from defendant and which from Gerzbach.
Lastly, no prejudice was established here because, under the theory of the defense "the lost evidence had little or no relevance" (People v Haupt, 71 NY2d, at 931, supra) to the issue actually contested at defendant's trial. As already discussed, the trial court found that the Rosario materials here consisted solely of Wynne's notations of each arrestee's name, location of the arrest and time of arrest. The defendant at the trial did not dispute that Wynne had in fact arrested him and Gerzbach, or the fact that he recorded their respective names on the envelopes. Accurate designation of the location of the arrest would have actually bolstered the defense position, in view of its heavy reliance on the testimony of the liquor store manager regarding the sequence of events leading to defendant's arrest outside his store. Moreover, there was absolutely no challenge at the trial to the actual times, or the sequence of timing, of the respective arrests of defendant and Gerzbach, again because these facts were irrelevant to whether Wasson had erroneously reversed their roles in observing the drug transaction that occurred before the arrest or, as also vaguely suggested in the defense summation, that the police somehow mixed up the roles of Gerzbach and defendant in doing the paperwork at the station house many hours after the arrests.
Therefore, contrary to the majority's finding, the relevance of the missing envelopes to the theory of the defense and the contested issue in this case (whether Gerzbach rather than defendant was the seller), was, if not totally nonexistent, even more "marginal" (majority opn, at 572) than the missing Rosario materials in People v Haupt (supra). In Haupt, this Court recognized that the missing documents there might indeed *580 have had some possible relevancy to the defendant's insanity defense but, nonetheless, upheld the discretion of the trial court in declining to impose sanctions. Instead, we held that it was sufficient that the defense counsel adversely commented on the missing materials in summation just as did the defendant's attorney in the instant case. "To the extent that it might have a bearing on the jury's assessment of the defendant's mental state at the time of the shooting, defense counsel on cross-examination and later on summation, noted its absence and emphasized the People's responsibility for its loss and the potential impact on the defense" (People v Haupt, 71 NY2d, at 931, supra).
As demonstrated by the foregoing discussion, absent sheer speculation on additional or different contents of the notations on the envelopes than that found by both courts below, the contents had no demonstrable value to prove: that the two vials were seized from defendant rather than Gerzbach; that the two vials were sold from a different source than the single vial taken from defendant's person; that the two officers mistakenly reversed the roles of the two arrestees in processing arrest papers later at the station house; or in any other way that Officer Wasson was in error in identifying defendant as the seller and Gerzbach as the buyer in the transaction he observed.
Thus, upon any fair reading of the record and of the defense position at the trial in this case, the majority's conclusion that there was an "articulable showing of prejudice" cannot be supported (majority opn, at 572), certainly not one that the majority has articulated, apart from its speculation on the contents of the missing envelopes. I fear that the teaching of the majority's decision today is that prejudice is established by the slightest, most tenuous connection between lost or destroyed Rosario materials and some issue at the trial. The decision will, for all intents and purposes convert the present rule in such cases, in which the issue of sanctions is dependent upon an individualized analysis and weighing of the People's culpability in the loss of the materials and a realistic assessment of prejudice to the defendant, into a per se rule in which sanctions would be mandatory except perhaps in the rarest of cases of lost or destroyed Rosario materials. My apprehension in this regard is fueled by the majority's criticism of me (majority opn, at 571-572, n) for resorting to the evidence at the trial to show the absence of prejudice from the lost Rosario materials here, as though the issue of actual *581 prejudice can be determined in a vacuum without reference to the trial evidence. Disregard of the trial evidence is the hallmark of this Court's Rosario per se reversal jurisprudence (see, People v Jones, 70 N.Y.2d 547, 552-553; People v Perez, 65 N.Y.2d 154, 159-160).
Upon any fair, realistic appraisal of the evidence at the trial, the issues framed by the defense and the likely contents of the missing envelope notations, the Appellate Division was clearly correct in concluding that defendant was not prejudiced by the absence of Rosario materials in this case. I, therefore, vote to affirm.
Order reversed, etc.
NOTES
[*] Similarly unpersuasive is the dissent's detailed dissection of the trial record in an effort to rebut defendant's claim of prejudice. The dissent's assertions are precisely the kind of fact-based arguments that would have been made before the jury if the envelopes had been available for use by the defense. Unfortunately, the destruction of those envelopes made it impossible for the defense to make contrary arguments at trial or to establish the kind of record that the dissent seems to demand. In light of that circumstance, we deemed the dissent's marshalling of the trial facts an unhelpful method for determining prejudice.