OPINION OF THE COURT
Richard Lee Price, J.
*184 The following is the decision and order of the court expanding on the decision rendered in court after hearings.
The defendants in this case have been indicted for murder in the second degree and other related charges. The defendants have moved for dismissal of their indictments on the basis of a Brady violation by the prosecutor. The defendants argued in court that the failure of the prosecutor to turn over statements made by Nicholas Taylor so severely prejudiced their case that the only remedy was dismissal. In the alternative they requested that the court make appropriate sanctions.
FINDINGS OF FACT
Three teenage homicides committed on May 18, 1992 form the basis for the indictments against the three above-named defendants, Gary Crespo (Crespo), Cory Jackson (Jackson), and Pedro Rosario (Rosario). The homicides took place in an apartment at 350 St. Ann’s Avenue in the Bronx. There were no witnesses to the actual shooting of the three victims. However, there are two main "circumstantial” witnesses to the events. The first is Milton "May May” Harris (Harris), who is the prosecution’s key witness; and the second is Nicholas Taylor (Taylor).
On the morning of May 21, 1992, Taylor made two statements. The first statement was made to Detective Slattery of the 40th Precinct at approximately 1:30 a.m. Detective Slattery wrote the statement out and then went over it with Taylor. At 3:45 on the same morning Taylor made a second statement under oath to Assistant District Attorney Tony Castro which was recorded by a court stenographer. In effect, both of Taylor’s statements support the facts as given by Jackson. Taylor stated that he was at the apartment building on the night that the murders took place, standing in the stairwell outside the apartment where the victims were shot. He stated that he saw one of the victims open the door after Jackson had already exited. He also stated that he saw Jackson standing outside the apartment when the shots were fired. However, the statements are also somewhat garbled in places, and do have some internal inconsistencies.
Despite the exculpatory nature of these statements, the District Attorney did not turn them over until September 6, 1995, over three years after they were taken. On September 7, 1995, Jackson requested prosecution assistance to be put into contact with Taylor. On September 15, 1995, the People produced Taylor in court in a special session before Judge *185 Hecht in Part B. At that time the court was informed that Taylor was to leave for school in Memphis, Tennessee, the next morning. Defendants’ attorneys were given an opportunity to speak with Taylor at that time and a subpoena was issued for Taylor’s return for trial. Taylor was then permitted to leave for Memphis.
After their initial interview with Taylor, the defendants asserted that he was of no use to their case and had no substantive memory of the events at issue. They then made motions for dismissal of the indictments on the basis that they had been denied any meaningful opportunity to use Taylor or his statements in the defense of their clients.
The People attribute Taylor’s lack of memory to his status as a special child who has limited comprehension. Although he is 16, according to his mother, Taylor operates at the level of a 10 year old and has problems with understanding.
The prosecutor argues that the failure to turn over Taylor’s name and/or his statements is not a Brady issue. The Assistant District Attorney argued that the numerous inconsistencies in Taylor’s statements made them incredible, and he was therefore under no obligation to turn them over. He further argues that Taylor was always a potential witness for the prosecution and additionally that he feared for Taylor’s life should the defense get a hold of his name.
After extensive arguments by both sides, including written briefs, the court requested that the prosecutor produce Taylor for an in-court examination in order to examine firsthand the witness’s mental and physical capacity. At the in-court examination, Taylor did show that he had some memory of the events in issue. He remembered being at the scene of the crime, and the gunshots fired. However, he was unable to recall many of the details that he had reported in his May 21, 1992 statements. He stated on the stand numerous times that he could not recall what happened or what he said to the police, but he did remember making the statements and telling the truth to the best of his ability.
CONCLUSIONS OF LAW
Under Brady, People are required to disclose, in advance of trial, evidence which is favorable to the accused. (Brady v Maryland, 373 US 83 [1963].) Evidence that the defendant is entitled to is not limited solely to evidence which supports the defendant’s trial theory. It also includes evidence which would bear on trial strategy. "If defendant would have had a better *186 or more successful trial strategy, had the unknown information been known, then justice would not have been done at the trial and the defendant’s fair trial rights would be violated.” (People v Jackson, 154 Misc 2d 718, 730 [Sup Ct, Kings County 1992], affd 198 AD2d 301 [2d Dept 1993], Iv denied 83 NY2d 806 [1994].) Obviously exculpatory evidence must be turned over to the defense even in the absence of a specific request. (United States v Agurs, 427 US 97, 107 [1976].) Moreover, the prosecutor should disclose it at the earliest possible moment. (People v Hunter, 126 Misc 2d 13, 15 [Sup Ct 1984]). "[J]ustice cannot be done if the prosecutor in withholding evidence, even for a brief period, casts himself in the role of an architect of a proceeding that does not comport with minimal standards of justice.” (Supra, at 16, citing Brady v Maryland, supra, at 87-88.)
I. Taylor’s Statements As Brady Material
The prosecutor has argued that Taylor’s statements are not Brady material. I find this argument to be disingenuous. Taylor states numerous times that Jackson was outside the apartment when the shots were fired. Should the trier of fact believe Taylor, it completely supports Jackson’s protestations of innocence. In addition, Taylor’s statements give leads as to other possible perpetrators of the crime — such as "Flat Top”. Its exculpatory value is evident on its face; and it was therefore a violation for the prosecutor to not turn the statements over to the defense attorneys sooner.
The prosecutor has additionally argued that he did not turn over the statements because he did not believe Taylor’s story to be credible. He also stated that he feared for Taylor’s safety should the defendants learn of his statements. While the Assistant District Attorney’s intentions were arguably well-meaning, they were misplaced in a situation where the law has already set forth clear guidelines for such situations.
New York courts have made it clear on several occasions that it is not for the prosecutor to decide the "usefulness” of evidence. (See, People v Springer, 122 AD2d 87 [2d Dept 1986]; People v Saddy, 84 AD2d 175 [2d Dept 1981].) Even if the Assistant District Attorney "had valid reasons to consider this witness to be unreliable, [he] should nonetheless have provided the defense with this important exculpatory information which was clearly Brady material”. (People v Robinson, 133 AD2d 859, 860 [2d Dept 1987], citing People v Fein, 18 NY2d 162, 172, appeal dismissed and cert denied 385 US 649 [1967].) It is for *187 the trier of fact, and not the prosecutor, to decide the credibility of witnesses (People v Stubbs, 154 Misc 2d 792, 796 [Rochester City Ct 1992]).
The prosecutor’s unilateral decision to withhold Taylor’s statements because he questioned his credibility was improper. His belief, even if held in good faith, does not overcome the violation. He should have turned over the statements, and his failure to do so on the grounds of his personal assessment that the witness was unreliable is inexcusable.
Similarly, the procedure in situations where there is fear for the safety of a witness is equally clear. If the evidence is of material importance to the defense on the question of guilt or innocence, then it should be disclosed. If there is fear that such disclosure would lead to intimidation or the exertion of undue influence on the witness, then proper safeguards may be employed. (People v Andre W., 44 NY2d 179, 186 [1978].) CPL 240.50 (1) gives the court the right to issue a protective order when there is a substantial risk of physical harm or intimidation involved.
The People’s contention that they did not turn over the Taylor statements because of fear for his safety is ineffective in insulating them from their Brady violation. First of all, the Assistant District Attorney’s fear for Taylor was most likely groundless. The usual scenario where a witness is in danger of being coerced occurs when the witness will give testimony unfavorable to the defendant. Here the testimony is not only favorable for the defendants, but is in fact extremely exculpatory. Moreover, had the Assistant District Attorney been truly worried about the safety of Taylor, he should have followed proper procedure and applied to the court for a protective order. As such, I find the People’s justification for failure to turn over the statements due to concern for Taylor’s safety unconvincing.
The prosecutor has also argued that if any Brady violation has occurred it has prejudiced only Jackson since he is the only defendant mentioned by name in Taylor’s statements. That argument is inapplicable to the facts of the case. Here defendants are accused of a specific series of criminal acts. Rosario and Crespo allegedly put out a contract for the death of Otis Lamont Blair, one of the victims, which was then accepted and carried out by Jackson. Jackson’s role as the hit man ties the three defendants together and was one of the People’s arguments for why the three should be jointly tried. The prosecutor may not now return before this court and argue that the *188 defendants are each separately liable, that their cases are each distinct, and that the Brady violation affects only Jackson.
The cases of these three defendants are closely intertwined, and doubt cast upon the strength of the case against Jackson throws doubt upon the cases against Rosario and Crespo. Should the trier of fact believe Taylor’s version of the events— then the cases against all the defendants would be significantly weakened. Taylor’s statements have exculpatory ramifications for not only Jackson, but for Rosario and Crespo as well and should have been provided to all three.
Moreover, where the outcome of a case turns on the credibility of a single prosecution witness, evidence impacting adversely on his credibility constitutes Brady material. (See, People v Cwikla, 46 NY2d 434 [1979]; People v Clausell, 182 AD2d 132 [2d Dept 1992].)
Here, Taylor’s statements in addition to bearing on the substantive case of all three defendants also bears upon the credibility of the People’s key witness, Milton Harris. The People have conceded in the hearings that the cases turned on his testimony. Taylor’s version of the events of the night of May 18, 1992 is completely at odds with Harris’. As such, Taylor’s contradictory version takes on heightened importance and the failure of the Assistant District Attorney to turn over the statements was improper.
Taylor’s statements constitute Brady material as to all three defendants; and as such, all defendants were entitled to receive it.
II. Sanctions
Whether and how severely the People should be sanctioned for the Brady violation turns on the importance of the evidence lost and to what extent a defendant has been prejudiced by that loss. "Negligent, as well as deliberate, nondisclosure may deny due process. Good faith, therefore, may not excuse even a negligent failure to disclose unrequested exculpatory evidence where that evidence is highly material to the defense.” (People v Simmons, 36 NY2d 126, 132 [1975], and cases cited therein.) Conversely, the People’s failure to turn over Brady material early in the proceedings will not violate a defendant’s constitutional right to a fair trial so long as the defendant is still afforded a meaningful opportunity to use the material at trial. (People v Cortijo, 70 NY2d 868 [1987].) In addressing such violations, "the overriding concern must be to eliminate any prejudice to the defendant while protecting the interests of society”. (People v Kelly, 62 NY2d 516, 520 [1984].)
*189 Defendants here argue that since the material withheld was extremely exculpatory they have been severely harmed in the preparation of their defenses. In addition they argue that since Taylor no longer has independent memories of many of the details of the incident that the harm is irreparable and that they are entitled to dismissal.
As support for their position they rely heavily on the case of People v Roberts (203 AD2d 600 [2d Dept 1994]). The Roberts case has a similar factual pattern. In that case, the People provided defense counsel with the exculpatory sworn statement of an eyewitness, made to an Assistant District Attorney, who said that it was a third party and not the defendant who had committed the crime for which defendant had been convicted. The People had been in possession of the statement for over a year before giving it to the defense. The Trial Judge determined that the statement should have been turned over sooner, but denied the defense motion for dismissal. Instead, the court had the statement read into evidence. However, the court then permitted the Assistant District Attorney on the case to cross-examine the Assistant District Attorney who took the statement and elicit that the witness had admitted to being drunk at the time of the incident and had been unable to either identify the shooter, or recollect what had occurred. After trial, the defendant was able to locate the witness who indicated a willingness to testify on his behalf. The Appellate Division considered the trial court remedy to be inadequate and in light of the witness’s willingness to testify ordered a new trial.
While the facts of Roberts (supra) are similar, they are distinguishable from- the facts of this case. First and most importantly not just Taylor’s statements, but Taylor himself was produced to the defendants before trial. The inability of the defense to speak to the witness in Roberts before trial was one of the main reasons given for the order of a new trial. Where, as here, the defendants are given the opportunity to speak with the witness and examine him before the case is put to a jury much of the prejudice inherent in the late turnover of Brady material is eliminated. Moreover, although Taylor does not remember all the details of the night of May 18, 1992, he does have some memory of the incident and is available for the defendants to use as they see fit. This eliminates the type of extreme prejudice which might require dismissal of the indictment. In fact generally, under similar circumstances, the production of a witness willing to cooperate with defendants prior to trial would obviate the need for any sanctions.
*190 Normally, a witness cannot be expected to recall each and every detail of an incident three years after its occurrence. The normal passage of time between the commission of a crime and trial makes it almost inevitable that the witness will forget some details. Unless the prosecution has somehow tampered with the witness, they cannot be held responsible for this loss of memory.
However, Taylor’s inability to recall much of the substantive details of the night of May 21, 1992 arises from an unusual set of circumstances. It has been noted on the record, conceded by all attorneys, and observed firsthand by the court that Taylor is learning disabled. This disability was recognized by Detective Slattery (Slattery), a former teacher, on the night that the statements were taken. Slattery told Assistant District Attorney Castro (Castro), the Assistant who took Taylor’s sworn statement of his assessment. Castro testified that he also believed that Taylor might have some mental handicap and difficulties with comprehension.
This learning disability is the reason behind Taylor’s extreme memory loss and was recognized from the outset by the police and prosecution. Had the prosecution turned over the statements in a timely way, it is likely that the defense would have had access to a witness with independent memories of the events of the night in question. Instead, the People held onto the statements and made no indication to the defense attorneys that they had knowledge of a witness with exculpatory information and a high probability of failing memory. The recognition of the danger that Taylor’s memory would degenerate at a high rate combined with the prosecution failure to turn over the statements in a timely way has led to prejudice of the defendants which requires a sanction.
Defense attorneys have urged that I dismiss the indictments against the defendants. "[A]s a general matter the drastic remedy of dismissal should not be invoked where less severe measures can rectify the harm, done by the loss of evidence.” (People v Kelly, 62 NY2d 516, 521 [1984], supra.) Instead, other more appropriate and less drastic action may be taken to address the possible prejudice. (See, People v Kelly, supra.)
Here the defense has lost some of the opportunity to use Taylor’s testimony in formulating their trial strategy. However, this loss does not rise to the level necessary to require dis *191 missal. Defendants will be permitted to introduce Taylor’s statements at trial. Additionally, the jury will be provided with an adverse inference charge regarding the Brady violation by the People.